**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BERNARD GALLO** | : | |
| **2639 Pirineos Way, Apt. 131** | : | |
| **Carlsbad, CA 92009** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. _____** |
| | : | |
| **WASHINGTON NATIONALS BASEBALL** | : | |
| **CLUB, LLC** | : | |
| **1500 South Capitol St. SE** | : | |
| **Washington, D.C. 20003** | : | |
| | : | |
| **Defendant.** | : | |

## **COMPLAINT**

Plaintiff, Bernard Gallo ("Plaintiff" or "Mr. Gallo"), by and through undersigned counsel, brings this Complaint against Washington Nationals Baseball Club, LLC ("Defendant," "Washington Nationals," or "Nationals") and alleges as follows:

## **INTRODUCTION**

1.  Well-established law prohibits discrimination in the workplace on the basis of religion, race, nationality, or disability.  Extraordinary societal or global events such as the covid-19 pandemic do not give employers license to exempt themselves from the law, nor to set aside its provisions based on their own preferences.

2.  Mr. Gallo was an exemplary employee of Defendant Washington Nationals, taking pride in his job of scouting new talent to suggest to his employer for

1

drafting to the Major League team.  It is a skilled job, and Mr. Gallo has been successfully performing his job functions with Defendant for nearly a decade.

3.    Even in the nationwide tragedy of the covid-19 pandemic, Mr. Gallo served Defendant with distinction, eager to perform well, maintain his health, and support the safety, health and well-being of his work colleagues.  He is a devout Christian, which informs his conduct and outlook at all times, including his demeanor, excellence in his work, and thoughtfulness of others.

4.    But none of this mattered to Defendant, who applied its vaccination policy in a manner that was lenient and accommodating to some employees, but needlessly harsh and inflexible as to others — including, sadly, Mr. Gallo.  Mr. Gallo's long and honorable work history did not matter to Defendant.  His ability to adapt and continue performing his job in the middle of a global pandemic did not matter to Defendant.  And even simple logic no longer mattered: Defendant's policy arbitrarily applied to some employees, but not others; and Defendant arbitrarily selected hard deadlines and enforced termination of employment for failure to comply with the policy.

5.    Worst of all, compliance with federal law no longer mattered to Defendant. Even when clearly notified regarding its obligations under civil rights laws to accommodate Mr. Gallo's religious beliefs and practices or what Defendant perceived as Mr. Gallo's disability, Defendant refused to comply with law, or even make an effort to do so.  As a result of this unlawful conduct by Defendant, Mr. Gallo was harmed, and he therefore brings his claims before this Court.

**PARTIES**

6.  Plaintiff is a resident of California, residing at 2639 Pirineos Way, Apt. 131, Carlsbad, California.  Mr. Gallo was employed as a baseball scout under the position of Area Supervisor for Southern California and Hawaii with Defendant's baseball club for approximately nine years.

7.  Defendant Washington Nationals Baseball Club, LLC is an American professional baseball team based in Washington, D.C. (the "Nationals") and is organized in the state of Florida.  The Nationals compete in Major League Baseball as a member club of the National League East division.  Defendant's Front Offices are located at 1500 South Capitol Street, SE Washington, DC 20003.

**JURISDICTION AND VENUE**

8.  This Court has original jurisdiction over Plaintiff's claims pursuant to 28 USC §§ 1331 and 1343. Mr. Gallo's claims arise under 42 USC § 2000e-5(f), of the Civil Rights Act of 1964, as amended ("Title VII") and 42 USC § 1981a; and under 42 USC §§ 12117 and 12203, of the Americans with Disabilities Act of 1990, as amended ("ADA").

9.  This Court also has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 USC § 1367(a).

10. Claims under DCHRA DC Code §§ 2–1402.01, *et seq.* are properly brought in this Court, as Plaintiff has not filed a complaint before the DC Office of Human Rights, as provided in DC Code § 2–1403.16.

3

11. This Court has personal jurisdiction over Defendant in this matter, as Defendant maintains its main Front Offices within the District of Columbia and engages in its main business of operating a professional baseball team of the city of the District of Columbia.  At all relevant times to the allegations in this Complaint, Defendant is an employer maintaining a minimum of fifteen employees and is engaged in an industry affecting commerce, pursuant to 42 USC §2000e(b), (g), (h) and 42 USC §12111(2), (5).

12. Venue is proper pursuant to 28 USC §1391, because the wrongful acts and omissions of Defendant giving rise to Plaintiff's claims occurred in the District where Defendant maintains its Front Office, and because Defendant is deemed to reside in this District pursuant to § 1391(c)(2).

## FACTS

### Defendant's Vaccinate or Terminate Policy

13. Mr. Gallo was employed by the Washington Nationals as an Area Supervisor, or Major League Scout in November of 2012.  Mr. Gallo's essential job function as a Scout was to locate prospective baseball players for the Nationals.  Mr. Gallo's primary responsibility in that role was to attend college, junior college, and high school baseball games and observe the performance of promising athletes in and around southern California and Hawaii.  All baseball games to which Mr. Gallo would go to scout talent were played outdoors, and to complete the observational function of his job, human-to-human interaction was not required.  Prior to the ubiquitous covid-19 pandemic guidelines for human interaction, Mr. Gallo's responsibilities included getting familiar with players and

4

their families.  However, since early 2020, these interactions were done through electronic or virtual conferencing means. Scouts continued to communicate virtually through 2021.

14. Mr. Gallo was an exemplary employee, fully able at all times during his employment to perform the duties of his employment position.  As a former professional minor league baseball player with the San Francisco Giants and Los Angeles Angels, and later a professional coach himself, Mr. Gallo has unique and highly specialized skills and experience in performing his job duties.

15. Mr. Gallo has never in his professional career been subject to any disciplinary actions.  Rather, Defendant celebrated Mr. Gallo's long-term service, and even honored him with a gift in recognition of his service.  Plaintiff was also elected Vice President of the Southern California Scouts Association by his peers in the industry, a position he lost when Defendant terminated him.

16. On August 12, 2021, Defendant instituted a mandatory covid-19 Vaccination Policy ("Policy" or "Vaccination Policy").  (**Exhibit A**).  The policy stated:

> As a condition of continued employment, all employees are required to be fully vaccinated against COVID-19 unless a reasonable accommodation under the Americans with Disabilities Act ("ADA") or for a sincerely held religious belief has been approved.  Employees who fail to provide proof of their fully vaccinated status in accordance with the attached timeline will be discharged from employment.

17. The referenced timeline for providing Defendant proof of covid-19 vaccination required a showing of first vaccination dose on or before August 26, 2021, for two-dose covid-19 vaccines from Pfizer and Moderna or the one-dose Johnson

& Johnson vaccine; and showing of the second vaccination dose was to be presented to Defendant by September 26, 2021.  **Exhibit A.**

18.  However, the policy was not accurate in stating all employees were subject to the Vaccination Policy, nor did it define Defendant's expectation of "fully vaccinated".

19.  By clarifying email sent to Mr. Gallo and other employees on the same date as the Policy announcement, Alan H. Gottlieb ("Mr. Gottlieb"), Defendant's Chief Operating Officer reiterated the Policy but qualified the Policy as pertaining only to "Washington Nationals full time employees and part time front office employees" and noted that "individuals are fully vaccinated two weeks after receiving their second dose of the Pfizer or Moderna vaccine or two weeks after receiving their dose of the Johnson & Johnson vaccine."  **Exhibit A.**

20.  Upon information and belief, Nationals' team baseball players were not subject to the Policy.  MLB union members were encouraged to obtain covid-19 vaccination, but not subject to the mandate policy.  As of March 2022, it is reported that MLB union players, coaches, and staff with field and clubhouse access were 85% vaccinated.[1]  The players Mr. Gallo may have had in-person contact with while working would not, if recruited, be subject to Defendant's Vaccination Policy.

21.  All employees receiving Mr. Gottlieb's email were instructed to notify Human Resources "immediately" if they intended to get "fully vaccinated."  The email

[1] See Blum, Ronald, "MLB drops regular COVID tests, can move games for health," Associated Press (March 16, 2022), *available at* https://apnews.com/article/covid-mlb-health-sports-new-york-mets-931763152401ba59bf097e480604cd7b (last accessed April 5, 2022).

also reminded employees of the deadlines involved in the Policy.  It also
threatened employees who did not receive their first shot by August 26, 2021,
that they would be placed on unpaid administrative leave for up to two weeks
while their situation was "reviewed by Human Resources."  The email further
threatened that all employees who failed "to provide proof of vaccination by
required dates will be separated from employment unless an exemption has
been approved."  **Exhibit A.**

### *Plaintiff's Objection to the Policy*

22.  Mr. Gallo is a devout Christian, who believes that his body is created by God, a
gift he must steward well by taking good care of his health. As part of his
religious beliefs, he objects to all vaccinations, and has not received a
vaccination since his childhood.  Upon hearing about Defendant's Vaccination
Policy, Mr. Gallo immediately filed a form request for a religious exemption by
email.  **Exhibit B.**

23.  In his form requesting a Title VII exemption, Mr. Gallo wrote, "[r]eceiving the
Covid-19 vaccination would violate my sincerely held religious beliefs, practices
and/or observances," further specifying in his request form that, "in prayer I feel
my Lord and Saviour is giving me the freedom to make a choice concerning MY
body."  **Exhibit B** (emphasis in original).

24.  As an alternative to the vaccination, Mr. Gallo expressed willingness wear a
mask in close quarters and indoor close contact, test weekly, and continue to
take good care of his body to maintain a healthy state by exercising, eating
healthy and taking vitamins.  **Exhibit B.**  Many other employers, including the

Federal Government, deemed some combination of masking, social distancing, testing, and remote work as appropriate accommodations for their unvaccinated employees.[2]

25.  Finally, in response to Mr. Gallo's request for exemption, on August 25, 2021, he spoke with individuals from Defendant's Human Resources to discuss the processing of his request.  The call was short, and Mr. Gallo summarized his beliefs and reasons for needing an exemption, as previously expressed on his exemption request form.  Defendant's counsel on the call asked Mr. Gallo intrusive questions regarding Mr. Gallo's practices and beliefs, which questions Mr. Gallo requested sent in writing to him.  The call was followed up with an email from Human Resources, requesting Mr. Gallo respond to the ten overly invasive questions about Mr. Gallo's religion and health. He readily answered this questionnaire, regardless of the intrusion into his privacy.  **Exhibit C**.

26.  Because of his religious belief regarding his obligation to care for his body and honor God, Mr. Gallo maintains a strict exercise regimen, eats organic foods, and takes no medications.  Additionally, Mr. Gallo is careful to use osteopathic therapies and generally does not seek aid from other medical professionals.  **Exhibit C.**

### *Defendant Denies Plaintiff Reasonable Accommodation*

27.  Two days later, on August 27, 2021, and without further discussion with Mr. Gallo regarding his responses on August 25, Betsy Philpott, Defendant's Vice

---

[2] See Nicole Ogrysko, "Federal employees must attest to vaccination or submit to testing, per new Biden policy," Federal News Network, pub. July 29, 2021, *available online at*: https://federalnewsnetwork.com/workforce/2021/07/federal-employees-must-attest-to-vaccination-or-submit-to-testing-biden-says/ . (last accessed April 12, 2022.)

President and General Counsel, sent Mr. Gallo an email, **Exhibit D**. In that email, Defendant conceded that Mr. Gallo's religious beliefs prevented him from being vaccinated, but denied his request for an accommodation. In an undated attachment, Defendant expounded on the denial, asserting that it "recognizes and respects [Mr. Gallo's] religious beliefs and would accommodate those beliefs if it could.  However, in light of the fact that a fully approved vaccine is now available, and given the nature of your position, duties, and essential functions, your continued performance of your duties without being vaccinated will pose an unacceptable risk to the health of Company employees (including you), customers, visitors, and others with whom you are required to interact in connection with your job duties."  **Exhibit D.**

28.   The denial was not based on any findings of individual risk posed by Plaintiff's remaining unvaccinated, nor any undue hardship the accommodation of his religious beliefs and practices would pose to Defendant.  Defendant did not explain why it cannot provide an accommodation, or why an accommodation would present an undue burden — nor can it do so. The Nationals continued to employ other employees — including another scout — who had medical exemptions. In addition, the accommodation Mr. Gallo sought was the same set of practices the Nationals had in place for Mr. Gallo for over a year under the covid-19 pandemic, both before and after covid-19 vaccines became available. Indeed, during 2021, scouts continued to interact virtually as before. The Nationals did not, and cannot, show why continuing to do what they had already been doing was an undue hardship. Furthermore, only a few months after Mr.

Gallo was denied accommodation and terminated, the MLB is no longer even imposing regular covid-19 testing; opting to test only symptomatic employees.[3]

29. The denial is patronizing and implies that Mr. Gallo's religious beliefs are wrong, informing him that remaining unvaccinated poses a threat **to himself** which Defendant finds "an unacceptable risk".  The denial also threatens punitive measures of unpaid leave and termination, should Mr. Gallo fail to provide proof of vaccination to Defendant by an extended deadline of August 31, 2021.

    **Exhibit D.**

30. The outright denial, without further discussion, represents a failure to engage in an interactive process to identify possible ways to accommodate Mr. Gallo. Given that Defendant found ways to accommodate other employees, including another scout, there is no good explanation for its failure to discuss the issue of accommodation.

31. There is no logical nexus between Plaintiff's vaccination status and whether he was put on unpaid versus paid leave. Paying him would not have had any effect on health risks to anyone.

32. There is no explanation why the accommodation of remote employment — the main way Plaintiff had been performing the essential functions of his job — was unavailable or unacceptable. Nor is there any explanation why a scout who

---

[3] See *supra* note 1.  Additionally, at the time of this filing, no high schools in Mr. Gallo's scouting region have any known covid-19 protocols in place; and a large number of colleges at which Mr. Gallo would perform his scouting duties no longer have covid-19 protocols enforced, e.g.: San Diego State University, UC Irvine, CSU Fullerton University of San Diego, and University of Hawaii, for example, regardless of vaccination status.

remains unvaccinated for medical reasons poses less of a risk to himself and others than a scout who remains unvaccinated for religious reasons.

33. Indeed, the unpaid leave and lingering threat of termination during the two weeks after the August 31 deadline appears to be a discriminatory, punitive, and coercive measure against Mr. Gallo for requesting an exemption from the Policy.  The denial pressures Mr. Gallo: "Should you receive a shot at any time within that two week period and provide proof of the same to the Company, you will be eligible to return to work.  Should you not receive a shot within that time period…your employment with the company will be terminated…."  **Exhibit D.**

34. Mr. Gallo requested and was summarily denied an appeal of this decision.

35. On September 1, 2021, Mr. Gallo was placed on unpaid administrative leave for up to two weeks and was told that he would be terminated effective September 15, 2021, for failure to comply with the covid-19 Vaccination Policy.  **Exhibit E**. The letter admitted that Mr. Gallo's job performance was good, and that Defendant's vaccine policy was the only reason he was being terminated: "We greatly appreciate the contributions you have made to the Company. If you decide to get vaccinated, please let us know right away so that you can continue your employment with us."  **Exhibit E.**

36. Another fact showing that Mr. Gallo was adequately performing his job duties is that before Defendant's attempt to impose the Policy, it had approved Mr. Gallo for work travel to Hawaii for November 2021.  There is no evidence Defendant would have terminated Mr. Gallo for failure to perform his job duties, or for any reason other than his refusal to violate his sincerely held religious beliefs.

### *Plaintiff Protests Defendant's Unlawful and Discriminatory Practices*

37.  After being placed on unpaid administrative leave, Mr. Gallo sought legal
     counsel to protest the discrimination against him and fight for his job position.
     On September 6, 2021, Mr. Gallo's attorney Charles LiMandri ("Attorney
     LiMandri"), sent an email to Bob Frost in Human Resources and Betsy Philpott
     on Mr. Gallo's behalf.  **Exhibit F.**  Attorney LiMandri notified the Defendant that
     termination of Mr. Gallo upon denial of his religious exemption request
     constituted unlawful discrimination under Title VII, 42 USC §§ 2000e, *et. seq.*
     He also sought consideration on Mr. Gallo's behalf of a medical exemption and
     reasonable accommodation. *Id.*

38.  Calling Defendant's denial of a reasonable accommodation unlawful, Attorney
     LiMandri again asserted Mr. Gallo's beliefs as a devout Christian regarding the
     sanctity of his physical body and obligation to take care of it. [4]  Additionally, he
     asserted Mr. Gallo's "extremely pro-life" beliefs, such that he "strenuously
     objects to injecting into his body a vaccination that is any way connected with
     taking the life of another human being through abortion," which he has learned
     is true of all covid-19 vaccines currently available in the United States.[5]
     **Exhibit F.**

---

[4] The request for reconsideration quotes the Bible: "Holy Scripture states: 'Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So, glorify God in your body.'"  It cites Jeremiah 1:4-5; Psalm 139:13-16; and Exodus 20:13.

[5] See James Lawler, MD, "You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells", Nebraska Medicine, pub. August 18, 2021, *available at:*
https://www.nebraskamed.com/COVID/you-asked-we-answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells. (last accessed April 5, 2022).

39. In the email, Attorney LiMandri also asserted entitlement to a medical exemption for Mr. Gallo because "he has already had COVID-19 and therefore has the protective antibodies in his system." The email attached his Patient Report, dated August 31, 2021, showing an antibody test, confirming natural immunity. **See Exhibit G.** The test showed his antibody levels to be consistent with those who were naturally immune, and possibly higher than antibody levels of those who had been vaccinated.

40. Attorney LiMandri requested Defendant reconsider its denial of Mr. Gallo's religious accommodation, sought a medical exemption that would excuse him from having to receive a covid-19 vaccine, and further requested that no adverse employment action be taken against him. **Exhibit F.**

41. Ms. Philpott on September 9, 2021, acknowledged that Mr. Gallo's religious beliefs were genuine and sincerely held ("the Nationals do not dispute Mr. Gallo's religious beliefs,") but went on to deny his requests for accommodation. **Exhibit F.** Defendant continued to assert that accommodating Mr. Gallo would pose "an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties." Defendant distorted Mr. Gallo's medical accommodation request, claiming that he had asserted that mere exposure was a disability. ("[P]rior exposure to COVID-19 does not qualify as a disability under the Americans with Disabilities Act. . .") Defendant, however, treated Mr. Gallo as if his health status rendered him dangerous to himself and unable to work, thus regarding him as disabled. Defendant then requested more invasive and legally irrelevant information

about Mr. Gallo's health, including asking him about medications and whether

he had been vaccinated against the flu. **Exhibit F**.

42.   On September 11, 2021, Attorney LiMandri responded to Defendant's

September 9 response.  **Exhibit F**.  Attorney LiMandri notified Defendant's

General Counsel Philpott that, "the burden falls on the Washington Nationals to

actually establish that it would constitute an 'undue hardship' for the company to

reasonably accommodate [Mr. Gallo's] request for a religious exemption.  The

Washington Nationals has not even attempted to do so and cannot do so in this

case."  *Id.*  He quoted from the EEOC guidance on discrimination in the

workplace to further clarify for Ms. Philpott that Defendant also bears the

burden of establishing that Mr. Gallo could not be accommodated: "an employer

may not simply assume that a threat exists; the employer must establish

through objective medically supportable methods that there is genuine risk that

substantial harm could occur in the workplace….[T]he ADA recognizes the

need to balance the interests of people with disabilities against the legitimate

interests of employers in maintaining a safe workplace."  *Id.*

43.   Attorney LiMandri, on Mr. Gallo's behalf, provided even further explanation of

the manner in which he performed his employment duties – how infrequently he

was required to engage in face-to-face meetings, how much of his work was

conducted outdoors, alone on his own, and over virtual conferencing, and how

he had engaged in careful practices and protocols - the same accommodation

he requested from Defendant - through the entire 2021 season from January 15

to August 11 "without issue, without a single problem of any kind."  **Exhibit F.**

14

44. In support of Mr. Gallo's request for both a religious and a medical exemption, Mr. LiMandri attached a medical report from R. Scott French, M.D., FACEP, an accomplished board-certified emergency room physician who had extensive experience treating covid patients. See **Exhibit H**.  According to the report, not only is the vaccine medically unnecessary for Mr. Gallo, but it poses a greater risk of harm to him than potential benefit.  Documentation of this kind informs Mr. Gallo's belief with regard to his moral obligation to preserve his body's health in accordance with God's law.  Attorney LiMandri reiterated the request that Defendant reconsider the denial and grant Mr. Gallo a religious and/or medical exemption, so that he could continue his productive employment with the Washington Nationals after September 15, 2021.

45. When no response to the September 11 email was received, Attorney LiMandri on Mr. Gallo's behalf sent another email to Defendant on September 16, 2021. **Exhibit F**.  The email expressed concern about Defendant's refusal to engage in the statutorily required "interactive process" with him to discuss reasonable religious and/or medical accommodation.   In closing, Attorney LiMandri informed Defendant that Mr. Gallo did not receive his paycheck the day prior, which was the date he was notified his employment would be terminated. As Defendant had withheld Mr. Gallo's regular pay, and Defendant failed to respond to Mr. Gallo and/or his counsel before its self-set date of his termination of September 15, 2021, it was assumed that Defendant's decision to deny Mr. Gallo all vaccine exemptions was final.

46. Just after his termination, Mr. Gallo was informed by the end of September by one of his supervisors that two other scouts for the Nationals were not going to have their contracts renewed due to their poor job performance.  Unlike Mr. Gallo, these two scouts, whose contracts ended around the time Mr. Gallo's ended in October, were allowed to finish out their current contracts with pay.

### *Plaintiff Files Claims of Discrimination with the EEOC*

47. Mr. Gallo turned to the Equal Employment Opportunity Commission ("EEOC") local office for assistance.  Mr. Gallo submitted his claims regarding Defendant's unlawful discrimination against him in a statement filed October 8, 2021.

48. On January 11, 2021, Mr. Gallo met with the investigator on his case and had a lengthy intake interview regarding his claims against Defendant for discriminating against him based on his Christian religious beliefs and perceived disability due to his ongoing unvaccinated medical status.  The investigator affirmed Plaintiff's claims merited filing a charge against Defendant and issued a charge for Plaintiff to review on January 26, 2022.

49. With some revisions, Plaintiff submitted the charge on January 27, 2022, to be served on Defendant.  The investigator accepted Plaintiff's request for Right to Sue authorization, which Notice was issued on March 28, 2022.  **Exhibit I.**

## CAUSES OF ACTION

## COUNT I:

**VIOLATION OF DISTRICT OF COLUMBIA HUMAN RIGHTS ACT ("DCHRA") DC CODE §§ 2-1401.01,** *et seq*:
**DISCRIMINATION AND RETALIATION ON THE BASIS OF RELIGION AND DISABILITY**

50. Each of the preceding paragraphs 1 through 49 are hereby incorporated by reference.

51. D.C. Human Rights Law prohibits discrimination on the basis of, *inter alia*, race, color, religion, national origin, sex, age, marital status, sexual orientation, gender identity or expression, genetic information, disability, or political affiliation.

52. Under DCHRA, a "'Disability' means a physical or mental impairment that substantially limits one or more of the major life activities of an individual having a record of such an impairment or being regarded as having such an impairment."  DC Code § 2–1402.02(5A).

53. Under the DCHRA of 1977, as amended, DC Code § 2–1402.11(a)(1), it is an unlawful discriminatory practice "to hire, or to discharge, any individual; or otherwise discriminate against any individual with respect to his or hers compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his or hers employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his or hers status as an employee;" on the basis of the individual's religion or disability, among other protected categories.

17

54. It is further an unlawful discriminatory practice under DCHRA § 2–1402.61 "to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed,…any right granted or protected under this chapter."

55. In August of 2021, Mr. Gallo objected to mandatory covid-19 vaccination, as required by Defendant for certain sectors of its employees, including Mr. Gallo. Promptly, on the same day he was notified of the requirement, Mr. Gallo submitted his request for religious exemption from the requirement and proposed reasonable accommodation, which was the set of precautions he had taken since the beginning of the covid-19 pandemic, in or around March of 2020.

56. Rather than engage in face-value, sincere discussions with Mr. Gallo regarding his request for accommodation, Defendant made a perfunctory phone call to Mr. Gallo to discuss his exemption, ignored his proposed accommodation, then summarily denied his request for exemption and accommodation.  Defendant placed him on unpaid leave on September 1, and by September 15, terminated his employment, only a few weeks before the natural end of his employment contract.  Defendant further failed to make any individualized risk assessment regarding Mr. Gallo's perceived disability.

57. Defendant's conduct demonstrates it engaged in prohibited discrimination by terminating Mr. Gallo due to his religious belief and due to Defendant's regarding him as disabled.

58. Moreover, Defendant has engaged in prohibited retaliation against Mr. Gallo because he objected to the abridgment of his right to exercise his religious beliefs and objected to Defendant's unlawful discrimination.  Defendant's summary termination of his employment, when other employees terminated around the same time as Mr. Gallo were granted the opportunity to complete their contract period with pay, is an unlawful retaliatory practice.

59. Defendant's unlawful discrimination and retaliation is the direct and proximate cause of deprivation of Mr. Gallo's equal employment opportunities and his economic and non-economic damages.  Defendant's unlawful conduct has caused Mr. Gallo damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from the humiliating mistreatment and discrimination, and from being singled out among other employees for his religious beliefs and as though he were contagious with an infectious disease, despite Defendant's acceptance of other unvaccinated employees.

60. Defendant's actions in engaging in discriminatory and retaliatory employment practices were intentional and carried out with malice or reckless indifference to Mr. Gallo's protected civil rights.  Therefore, Mr. Gallo is entitled to recover punitive damages against Defendant.

WHEREFORE, Mr. Gallo requests that this Court enter a judgment in favor of Mr. Gallo and against Defendant Washington Nationals Baseball Club LLC, reverse Mr. Gallo's termination, order Defendant to reinstate his employment, and award Mr. Gallo backpay damages, with interest, reasonable attorney's fees and costs, and any other relief that

the Court deems proper, including but not limited to, punitive damages for Defendant's

malicious deprivation of Mr. Gallo's rights.


**COUNT II**
**VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**
**("TITLE VII") 42 USC §§ 2000e, *et seq*:**
**DISCRIMINATION ON THE BASIS**
**OF RELIGIOUS BELIEF AND PRACTICE**

61.   Each of the preceding paragraphs 1 through 60 are hereby incorporated by

reference.

62.   Title VII (42 USC § 2000e-2(a)) provides that:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or
otherwise to discriminate against any individual with respect to his
compensation, terms, conditions, or privileges of employment,
because of such individual's race, color, religion, sex, or national
origin; or

(2) to limit, segregate, or classify his employees or applicants for
employment in any way which would deprive or tend to deprive any
individual of employment opportunities or otherwise adversely
affect his status as an employee, because of such individual's race,
color, religion, sex, or national origin.

63.   Religion under the statute "includes all aspects of religious observance and

practice, as well as belief, unless an employer demonstrates that he is unable

to reasonably accommodate to an employee's or prospective employee's

religious observance or practice without undue hardship on the conduct of the

employer's business."  42 USC § 2000e(j).  It is well established in the law that

part of religious observance and practice may involve refusal of medical

treatment and vaccination.

64. Additionally, 42 U.S.C. § 2000e-3(a) prohibits retaliation against an employee for opposing an employer's unlawful action prohibited by Title VII: "It shall be an unlawful employment practice for an employer… to discriminate against any individual… because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

65. In August of 2021, Mr. Gallo objected to mandatory covid-19 vaccination, as required by Defendant for certain sectors of its employees, including Mr. Gallo. Promptly, on the same day he was notified of the requirement, Mr. Gallo submitted his request for religious exemption from the requirement and suggested proposed reasonable accommodation, which were the precautions he had taken since the beginning of the covid-19 pandemic, in or around March of 2020.

66. Rather than engage in face-value, sincere discussions with Mr. Gallo regarding his request for accommodation, Defendant made a perfunctory phone call to Mr. Gallo to discuss his exemption, ignored his proposed accommodation, then summarily denied his request for exemption and accommodation.

67. Defendant placed him on unpaid leave on September 1, and by September 15, terminated his employment, only a few weeks before the natural end of his employment contract.  Defendant singled out Mr. Gallo for his religious beliefs and practice, and refused to accommodate his religious beliefs and practice, even while not subjecting other employees to Defendant's arbitrary mandate.

Moreover, two other employees in the same job position as Mr. Gallo were terminated for reasons unrelated to the vaccination mandate and were granted the opportunity to complete their contract period with pay.  Mr. Gallo was placed on unpaid leave and then summarily terminated, despite having a similar contract end date as the other two terminated employees.

68.  Defendant placed Mr. Gallo on unpaid leave and ultimately terminated his employment due to his religious belief and practice and his opposition to Defendant's unlawful discrimination. This constitutes prohibited discriminatory employment practices and retaliation under Title VII.

69.  Defendant's unlawful discrimination is the direct and proximate cause of deprivation of Mr. Gallo's equal employment opportunities and his economic and non-economic damages.  Defendant's unlawful conduct has caused Mr. Gallo damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other employees for his religious beliefs, despite Defendant's acceptance of other unvaccinated employees.

70.  Defendant carried out its discriminatory employment practices intentionally with malice or reckless indifference to Mr. Gallo's protected civil rights.  Therefore, Mr. Gallo is entitled to recover punitive damages against Defendant.

WHEREFORE, Mr. Gallo requests that this Court enter a judgment in favor of Mr. Gallo and against Defendant Washington Nationals Baseball Club LLC, reverse Mr. Gallo's termination, order Defendant to reinstate his employment, and award Mr. Gallo backpay

22

damages, with interest, reasonable attorney's fees and costs, and any other relief that the Court deems proper, including but not limited to, punitive damages for Defendant's malicious deprivation of Mr. Gallo's rights.

**COUNT III**
**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED ("ADA") 42 USC §§ 12111, *et seq*:**
**DISCRIMINATION ON THE BASIS**
**OF PERCEIVED DISABILITY**

71. Each of the preceding paragraphs 1 through 70 are hereby incorporated by reference.

72. Mr. Gallo is a "qualified individual" who is an employee of Defendant, as defined under the ADA. 42 USC 12111(4), (8). Mr. Gallo performed the essential functions of his position admirably for nearly nine years, and for roughly eighteen months of that time, performed the essential functions of his position using recommended measures for protection from covid-19 infection, including performing most of his duties remotely, completing in-person work outdoors, wearing face masks, and undergoing regular covid-19 tests.

73. Under the terms of the ADA, one is considered to have a disability if he or she: has "(A) a physical or mental impairment that substantially limits one or more of that person's major life activities; (B) has a record of such impairment; or (C) is regarded as having such an impairment…." 42 U.S.C § 12102(1).

74. To establish a disability under the third definition, being regarded as having an impairment, the ADA provides:

> (A) An individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment

whether or not the impairment limits or is perceived to limit a major life activity.

(B) Paragraph (1)(C) shall not apply to impairments that are transitory and minor. A transitory impairment is an impairment with an actual or expected duration of 6 months or less.

42 USC § 12102(3).

75. Covid-19 is not transitory and minor.[6]  At all relevant times material to this action, covid-19 was a well-known, highly contagious, and sometimes deadly virus that has resulted in an ongoing global pandemic.[7]  Furthermore, Defendant's Vaccine Policy confirms Defendant's belief that covid-19 was not transitory nor minor.

76. In August of 2021, Mr. Gallo objected to mandatory covid-19 vaccination, as required by Defendant for certain sectors of its employees, including Mr. Gallo. Promptly, on the same day he was notified of the requirement, Mr. Gallo submitted his request for (religious) exemption from the requirement and suggested proposed reasonable accommodation, which were the precautions he had taken since the beginning of the covid-19 pandemic, in or around March of 2020.

---

[6] Circuit courts deciding ADA cases involving covid-19 differ in the opinion of whether covid-19 is a disability.  *Champion v. Mannington Mills, Inc.*, No. 5:21-cv-00012-TES, 2021 U.S. Dist. LEXIS 89381, *1 (M.D. Ga. May 10, 2021) (opining it would be absurd to hold that workers who contracted covid-19 were "disabled") *cf Matias v. Terrapin House, Inc.*, No. 5:21-cv-02288, 2021 U.S. Dist. LEXIS 176094, 2021 WL 4206759, at *4 (E.D. Pa. Sept. 16, 2021) (citing agency guidance to conclude that covid-19 may be an ADA disability as it is not always transitory and is not minor).
[7] The World Health Organization provides a covid-19 Dashboard which reports the number of cases reported in a 24 hour period, the cumulative cases, and the cumulative deaths.  See https://covid19.who.int/  The United States dashboard numbers are *available at:* https://covid19.who.int/region/amro/country/us (last accessed April 5, 2022).

77. The assumptions made by Defendant after receiving notice of Mr. Gallo's
medical status as unvaccinated against covid-19 were used to justify
Defendant's incorrect and unlawful determination that Mr. Gallo could not
perform his job duties because he was disabled and would put the other
Nationals employees at risk.  This assumption is not based on any reasonable
understanding of the facts regarding Mr. Gallo's ability to perform his essential
job duties with or without accommodation.  There was no factual support for the
idea that Mr. Gallo **could not** perform his essential job duties with the use of a
mask and frequent testing, at a minimum.

78. Defendant failed to make any individualized risk assessment regarding Mr.
Gallo's perceived disability.  Defendant placed him on unpaid leave on
September 1, and by September 15, terminated his employment, only a few
weeks before the natural end of his employment contract.

79. The Nationals relied on Mr. Gallo's admission of being unvaccinated, were
informed of his prior covid-19 infection and given proof of antibodies from prior
infection and treated him as though he were contagious with covid-19,
continuing to ostracize and pressure Mr. Gallo to get vaccinated immediately
and show proof of at least a first dose.  Defendant ignored Mr. Gallo's
objections and requests for exemption.  When Mr. Gallo did not obtain
vaccination within the arbitrary deadlines assigned by Defendant, Defendant
fired him.

80. Defendant's unlawful discrimination is the direct and proximate cause of
deprivation of Mr. Gallo's equal employment opportunities and his economic

and non-economic damages.  Defendant's unlawful conduct has caused Mr. Gallo damages, including but not limited to, lost wages, future loss of income, job search expenses; and emotional distress from the violation of his civil rights, from humiliating mistreatment and discrimination, and from being singled out among other employees for a perceived disability, despite Defendant's acceptance of other unvaccinated employees.

81.  The conduct of Defendant was so willful and wanton and in such reckless disregard of the statutory rights of Mr. Gallo so as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

WHEREFORE, Mr. Gallo requests that this Court enter a judgment in favor of Mr. Gallo and against Defendant Washington Nationals Baseball Club LLC, reverse Mr. Gallo's termination, order Defendant to reinstate his employment, and award Mr. Gallo backpay damages, with interest, reasonable attorney's fees and costs, and any other relief that the Court deems proper, including but not limited to, punitive damages for Defendant's malicious deprivation of Mr. Gallo's rights.

**COUNT IV**
**VIOLATION OF THE ADA, 42 USC § 12203:**
**PROHIBITED RETALIATION AND COERCION**

82.  Paragraphs 1-81 are incorporated here by reference.

83.  The ADA prohibits retaliation and coercion for protected activities:

> (a) Retaliation
> No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified,

26

assisted, or participated in any manner in an investigation,
proceeding, or hearing under this chapter.

(b) Interference, coercion, or intimidation
It shall be unlawful to coerce, intimidate, threaten, or interfere with
any individual in the exercise or enjoyment of, or on account of his
or her having exercised or enjoyed, or on account of his or her
having aided or encouraged any other individual in the exercise or
enjoyment of, any right granted or protected by this chapter.

42 USC § 12203.

84. When Mr. Gallo objected to Defendant's refusal to allow him the reasonable
accommodation that he had already been using for over a year and treated him
as though he were disabled and his continued employment posed an
"unacceptable risk" to others, Defendant used unlawful retaliatory and/or
coercive tactics against Mr. Gallo.

85. Defendant placed Mr. Gallo on unpaid leave on September 1, 2021, without
explaining its decision not to put him on paid leave. Mr. Gallo continued to
object to Defendant's baseless perception of his medical condition and
discrimination against him on that basis, sought legal counsel, and fought to
retain his employment position and return to paid work. However, two weeks
later, without any further investigation and only reiterating prior statements,
Defendant terminated Mr. Gallo's employment, only a few weeks before the
natural end of his employment contract.

86. Defendant's decision makers were aware of Mr. Gallo's protected activity of
requesting an exemption to the vaccination policy. Their later unlawful
termination of Mr. Gallo was no coincidence, but was an act of retaliation.

87. Defendant did not summarily terminate nor place two other Area Supervisor (Scout) employees on unpaid leave prior to their termination for performance-based reasons. In light of this, Defendant's behavior towards Mr. Gallo appears irrational and motivated by a desire to punish him for complaining about discrimination.

88. Defendant's prohibited retaliation against Mr. Gallo is a direct and proximate cause of Mr. Gallo's economic and non-economic damages.  Defendant's unlawful conduct has caused Mr. Gallo damages, including but not limited to, lost wages, future loss of income, job search expenses, and emotional distress from the violation of his civil rights, and humiliating mistreatment.

89. The conduct of Defendant was so willful and wanton and in such reckless disregard of the statutory rights of Mr. Gallo so as to entitle him to an award of punitive damages against Defendant, to deter it, and others, from such conduct in the future.

WHEREFORE, Mr. Gallo requests that this Court enter a judgment in favor of Mr. Gallo and against Defendant Washington Nationals Baseball Club LLC, reverse Mr. Gallo's termination, order Defendant to reinstate his employment, and award Mr. Gallo backpay damages, with interest, reasonable attorney's fees and costs, and any other relief that the Court deems proper, including but not limited to, punitive damages for Defendant's malicious deprivation of Mr. Gallo's rights.

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all issues so triable.

This 20th day of April, 2022.                    Respectfully submitted,

_____//S//_____
Rachel L.T. Rodríguez, Esq.
VIRES LAW GROUP, PLLC
DC Bar #501324
515 N. Flagler Dr., Suite P300
West Palm Beach, FL 33401
Phone/Fax: (561) 370-7383
rrodriguez@vireslawgroup.com

*Counsel for Plaintiff Bernard Gallo*

_____//S//_____
Charles S. LiMandri, Esq.
LiMANDRI & JONNA LLP
DC Bar #383858
*Pro hac vice to DDC pending*
P.O. Box 9120
Rancho Santa Fe, CA  92067
Phone/Fax: (858) 759-9930/(858) 759-9938
cslimandri@limandri.com

*Special Counsel for Plaintiff Bernard Gallo*
*Appointed by*
Thomas More Society
309 W. Washington Street, Suite 1250
Chicago, IL 60606
Phone: (312) 782-1680