Bernard Gallo's Request for Exemption from Vaccine Mandate

Charles Limandri <climandri@limandri.com>
Redacted

**From:** Charles Limandri <climandri@limandri.com>
**Date:** September 16, 2021 at 11:37:15 AM PDT
**To:** betsy.philpott@nationals.com, bob.frost@nationals.com
**Cc:** bennygallo@hotmail.com, Paul Jonna <pjonna@limandri.com>
**Subject: FW: Bernard Gallo's Request for Exemption from Vaccine Mandate**

Ms. Philpott:

I am writing in follow-up to my e-mail below to you of September 11, 2021, to which I have received no response. That e-mail was written in response to your request for additional information on September 9, 2021. I provided that information in the form of a detailed description of Mr. Gallo's job duties, which are performed outdoors with little to no in-person interaction required with other employees and potential recruits, etc. I also provided a report from a board certified emergency room physician that it was medically contraindicated for Mr. Gallo to get the COVID vaccination.

As you may know, under these circumstances, the Washington Nationals is required by Title VII to engage in an "interactive process" with the employee to discuss the provision of a reasonable accommodation for his request for a religious and/or medical exemption. Since the Washington Nationals has already accepted the fact that Mr. Gallo has a sincerely held religious belief against receiving the vaccination, it can only deny a religious or medical exemption if it can establish an "undue hardship" to the company. The Washington Nationals has not done so, and can not do so, in this case.

We are also aware that Mr. Gallo did not receive his paycheck yesterday, which was the date he was notified his employment would be terminated. Because the Washington Nationals has withheld his pay and not responded to us before its self-set date of his termination of September 15, 2021, we must assume that its decision is final. For that reason, we have retained as co-counsel a local employment attorney in Washington, D.C. who is prepared to take the next steps to protect Mr. Gallo's legal rights.

We anticipate that those next steps will be taken early next week if we do not hear back from you within the next two days. In that event, we will take the lack of any further response from the

Washington Nationals, in violation of the requirements of Title VII, as a tacit admission that Mr. Gallo's termination is for an unlawful discriminatory purpose. We still hope that litigation can be avoided, however, if we receive a favorable response from you within the next two days. We fully expect that, if litigation proves necessary, it will vindicate not only Mr. Gallo's religious liberty interests, but also help set legal precedent that will prevent others from having their religious liberty rights violated in a similar unlawful manner.

Sincerely,

Charles S. LiMandri

******************************
**Charles S. LiMandri**
**LIMANDRI & JONNA LLP**
P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 | Fax: (858) 759-9938
cslimandri@limandri.com | https://www.limandri.com/


Daily Journal California Lawyer
Attorneys of the Year (CLAY) Award for 2021;
Board Certified in Pre-Trial Practice and
Trial Advocacy by the National Board of Trial Advocacy;
Admitted to Practice in CA, NY, DC, and before the U.S. Supreme Court

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

**From:** Charles Limandri
**Sent:** Saturday, September 11, 2021 11:59 PM
**To:** betsy.philpott@nationals.com; bob.frost@nationals.com
**Cc:** bennygallo@hotmail.com; scott@magiscenter.com
**Subject:** Bernard Gallo's Request for Exemption from Vaccine Mandate

> Ms. Philpott:
> Thank you for your response below. We note that you stated the following: "In connection with Mr. Gallo's request for a religious exemption, the Nationals do not dispute Mr. Gallo's religious beliefs. As we have previously stated, we recognize and respect Mr. Gallos' religious beliefs but given the nature of his position, the Nationals cannot accommodate Mr. Gallo's religious beliefs without posing an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties."
> Since the legitimacy of Mr. Gallo's request for a religious exemption is not at issue, the burden falls on the Washington Nationals to actually establish that it would constitute an "undue hardship" for the company to reasonably accommodate his request for a religious exemption. The Washington Nationals has not even attempted to do so and can not do so in this case. According to the U.S. EEOC: "To prove undue hardship, the employer will need to demonstrate how much cost or disruption a proposed accommodation would

involve. An employer cannot rely on potential or hypothetical hardship when faced with a religious obligation that conflicts with scheduled work, but rather should rely on objective information. A mere assumption that many more people with the same religious practices as the individual being accommodated may also seek accommodation is not evidence of undue hardship." (https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace).

Similarly, in the case of a medical exemption, the EEOC states as follows: "The ADA expressly permits employers to establish qualification standards that will exclude individuals who pose a direct threat -- i.e., a significant risk of substantial harm -- to the health or safety of the individual or of others, if that risk cannot be lowered to an acceptable level by reasonable accommodation. However, an employer may not simply assume that a threat exists; the employer must establish through objective, medically supportable methods that there is genuine risk that substantial harm could occur in the workplace. By requiring employers to make individualized judgments based on reliable medical or other objective evidence rather than on generalizations, ignorance, fear, patronizing attitudes, or stereotypes, the ADA recognizes the need to balance the interests of people with disabilities against the legitimate interests of employers in maintaining a safe workplace." (https://www.eeoc.gov/laws/guidance/ada-questions-and-answers).

As you may know, on September 9, 2021, President Biden ordered that private employers, with over 100 employees, are to give those employees the option of either being vaccinated or being subject to weekly COVID testing: https://apnews.com/article/joe-biden-business-health-coronavirus-pandemic-26bace6485d88ad1ae3ef2aea60fbb65. This action by the government will be challenged in the courts and is expected to be found to be unconstitutional. Nonetheless, the Washington Nationals has adopted a policy that goes even further than the presumptively unconstitutional policy announced by the Administration for private employers.

Notwithstanding the foregoing, Mr. Gallo has already offered to be tested weekly and his very reasonable request for such an accommodation has been inexplicably and unreasonably denied by the Washington Nationals. Given the available reasonable accommodations that he seeks, this is clearly in violation of what are admitted to be his sincerely held religious beliefs. To demonstrate that he poses no significant risk to himself or others, one only need consider his actual job duties. In his own words, Mr. Gallo has provided the following description of those job duties:

*"1. First and foremost, I go to games to find prospects. All the games played in my area, as well as those games I've attended outside my given area, take place outdoors. Occasionally I would move around to different areas of the park to see different angles, following the guidelines set forth by the different schools.*

*2. Once I identify the prospect, I will write one or possibly 2 reports on that player. One is a follow report, which is done in the time prior to a player's draft eligibility, and the second report is done when I have decided to turn that player in for the draft. Follows are not eligible until the draft report is done; once the official report is submitted to the office, a draft ID is generated by MLB. Since 2020, all of these reports have been done alone in either my house or in my hotel room alone.  In 2020, many of my reports were reports written after seeing players in person; From mid-March through to the June 2020  draft, the players I hadn't gotten to yet I reported from past videos, due to the shutdown.*

*3. Part of my duties involve getting familiar with the players, for example speaking to the players, getting to know the family if possible, getting background on the players, medical history, grades in school, by talking to coaches, agents, advisors, etc. Since 2020 a lot of this interaction was either outdoors at the ball park or by phone, Zoom, or FaceTime.*

*4. Meetings: Our organization only held 3 draft meetings in person in the 9 years I've been with the team: Two in DC, one in West Palm Beach where the Spring Training complex is located. The only other interaction with employees would be if I had to pick up my supervisors from the airport or hotel in my car when they came into my area. The only other time I was in DC was for the World Series in 2019, and we were not allowed into the offices of Nationals Park. We could only go from the hotel to the park, and then to our seats in the upper deck. We did not meet as a group during those 3 days, in fact I did not even see half of our scouting department during that time. No meals, no drinks, no contact at all.*

*5. I worked the entire 2021 season, from the time the Nationals allowed us to go and scout, January 15 to August 11, without issue, without a single problem of any kind. I obeyed the individual school requirements pertaining to masking, distancing, etc., where necessary. Some places were more lenient than others, nevertheless I did whatever was asked without any complaints.*

*This sums it up. Of course, there's the grading system and what we look for, tools, physical and mental that go into the reports, but that's it. I'm either outdoors or alone in my house on the computer writing the reports."*

Since virtually all of Mr. Gallo's work that involves potential contact with other people can successfully be done, and has been done, outdoors or virtually, and since he has agreed to be tested weekly, he certainly poses no "direct threat -- i.e., a significant risk of substantial harm -- to the health or safety of the individual or of others". What is more, however, is the fact that he has natural immunity that provides even greater protection to himself and others than does the available vaccines.

In that regard, and in further support of his request for exemptions based on both his religious beliefs and his medical status, we are attaching the medical report for Mr. Gallo of R. Scott French, M.D., FACEP. Dr. French is an accomplished board certified emergency room physician who is currently treating COVID patients. We are also attaching Dr. French's impressive C.V. His attached report establishes that not only is the vaccine medically unnecessary for Mr. Gallo, but it poses a greater risk of harm to him than potential benefit. For these reasons, we request that you reconsider the denial, and grant Mr. Gallo a religious and/or medical exemption so that he can continue his productive employment with the Washington Nationals after September 15, 2021. In the meantime, Ms. Philpott, thank you again for your professional courtesy and cooperation in this matter and we look forward to hearing from you soon.

Sincerely,
Charles S. LiMandri
*******************************

**Charles S. LiMandri**
**LIMANDRI & JONNA LLP**
P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 | Fax: (858) 759-9938

cslimandri@limandri.com | https://www.limandri.com/

Daily Journal California Lawyer
Attorneys of the Year (CLAY) Award for 2021;
Board Certified in Pre-Trial Practice and
Trial Advocacy by the National Board of Trial Advocacy;
Admitted to Practice in CA, NY, DC, and before the U.S. Supreme Court

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.

---

**From:** Betsy Philpott <Betsy.Philpott@nationals.com>
**Sent:** Thursday, September 9, 2021 12:48 PM
**To:** Charles Limandri <climandri@limandri.com>
**Cc:** Bob Frost <Bob.Frost@nationals.com>
**Subject:** RE: Bernard Gallo's Request for Exemption from Vaccine Mandate

Mr. Limandri-

We have had a chance to review your email and the other documents that you provided to us regarding Mr. Gallo's requests for exemptions from the Nationals' vaccine policy. In connection with Mr. Gallo's request for a religious exemption, the Nationals do not dispute Mr. Gallo's religious beliefs. As we have previously stated, we recognize and respect Mr. Gallos' religious beliefs but given the nature of his position, the Nationals cannot accommodate Mr. Gallo's religious beliefs without posing an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties.

As you noted below, Mr. Gallo had not previously raised a request for a medical exemption. Based on our review of the information that has been provided to us, the Nationals must decline to grant Mr. Gallo's request for a medical exemption because prior exposure to COVID-19 does not qualify as a disability under the Americans with Disabilities Act. However, if Mr. Gallo can provide any of the following additional information, then we will review it as part of the interactive process:

1. The nature and severity of the specific disability that prevents him from being able to safely receive a COVID-19 vaccine;

2. The reason that this disability prevents him from receiving a COVID-19 vaccine; and

3. Supporting medical documentation, if any.

Thank you,

**Betsy Philpott**
**Vice President & General Counsel**

**Washington Nationals**

Nationals Park | 1500 South Capitol Street, SE | Washington, DC 20003
O: 202.640.7312 | Betsy.Philpott@nationals.com

---

**From:** Charles Limandri <climandri@limandri.com>
**Sent:** Monday, September 6, 2021 11:06 AM
**To:** Betsy Philpott <Betsy.Philpott@nationals.com>; Bob Frost <Bob.Frost@nationals.com>
**Subject:** [EXTERNAL] Bernard Gallo's Request for Exemption from Vaccine Mandate

Dear Ms. Philpott and Mr. Frost:

Please be advised that the undersigned is the attorney for Bernard Gallo in the matter concerning his threatened termination from the Washington Nationals, effective on September 15, 2021. As you know, Mr. Gallo has been informed by you that if he does not receive a mandatory vaccination for COVID-19 by that date, his employment with the Washington Nationals will be terminated. In that regard, the Washington Nationals has informed him that his request for a religious exemption pursuant to Title VII has been denied. It is our position that the termination of Mr. Gallo would be unlawful because his request for a religious exemption is required to be granted by Title VII. See 42 U.S.C. Section 2000e, et. seq. Furthermore, Mr. Gallo should be entitled to receive a medical exemption for the reasons set forth below.

As to the religious exemption, Mr. Gallo has previously informed you that his religious beliefs as a devout Christian prohibit him from having any vaccination. For that reason, he has also informed you that he has had no vaccination for any purpose since he was a small child. In that regard he is following the Holy Scripture which states: "Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body." As a devout Christian, Mr. Gallo is also extremely pro-life, which means that he believes abortion is against the law of God. This means that he further strenuously objects to injecting into his body a vaccination that is any way connected with taking the life of another human being through abortion. He has become aware that all of the COVID-19 vaccines used cell lines originated from aborted children in their manufacturing or testing.

As a Christian, Mr. Gallo believes that life begins at conception and ends at natural death. The Scriptures reveal that God knows us even before we are conceived. See Jeremiah 1:4 – 5 ("The word of the Lord came to me, saying, 'Before I formed you in the womb I knew you, before you

were born I set you apart; I appointed you as a prophet to the nations.'"). And God's creative powers are effectively at work while we are yet in the womb. See Psalm 139:13 – 16 ("For you created my inmost being; you knit me together in my mother's womb. I praise you because I am fearfully and wonderfully made; your works are wonderful, I know that full well. My frame was not hidden from you when I was made in the secret place, when I was woven together in the depths of the earth. Your eyes saw my unformed body; all the days ordained for me were written in your book before one of them came to be.").

The Christian Church has condemned abortion – the killing of human infants while in the womb – from earliest times. The Didache, a conduct code of the early Christian community, dated by some as being as early as 70 AD, is in accord with Scripture, stating: "[D]o not abort a foetus or kill a child that is born." Loeb Edition of the Apostolic Fathers (also translated as, "Thou shalt not murder a child by abortion nor kill that which is begotten."). A Plea for Christians, written around AD 177 by Athenagoras, stated, "[W]e say that those women who use drugs to bring on abortion commit murder, and will have to give an account to God for the abortion." Tertullian, in his Apologeticum, written in 197 AD, wrote: "Murder being once for all forbidden, we [Christians] may not destroy even the fetus in the womb, . . ."

Hence, upon learning that the vaccines were manufactured or tested using abortive tissue from fetuses, it is Mr. Gallo's sincerely held religious belief that abortion is murder, a violation of one of the Ten Commandments ("You shall not murder." Exodus 20:13), and, for that reason, it would violate his sincerely held religious beliefs to cooperate with or be complicit in abortion in any way. The COVID-19 vaccines were developed or tested using cell lines that were generated or derived from tissues of aborted fetuses. J&J used an aborted fetal cell line in manufacturing its COVID-19 vaccine, while Moderna and Pfizer used aborted fetal cell lines in testing the efficacy of their vaccines. See James Lawler, MD, You asked, we answered: Do the COVID-19 vaccines contain aborted fetal cells", Nebraska Medicine, August 4, 2021, https://www.nebraskamed.com/COVID/you-asked-we- answered-do-the-covid-19-vaccines-contain-aborted-fetal-cells.

So, it is Mr. Gallo's sincerely held religious belief that, in being vaccinated with any of the COVID-19 vaccines, he would be cooperating with and complicit in abortion – the ending of an innocent human life – and that such would constitute a sin against God and a violation of His Commandments, for which he would be held morally accountable by God. For that additional reason, he is requesting a religious accommodation, under Title VII and any similar District of Columbia law(s), that will excuse him from having to receive a COVID-19 vaccine, and further request that no adverse employment action be taken against him on account of his religious beliefs.

Mr. Gallo is also entitled to a medical exemption because he has already had COVID-19 and therefore has the protective antibodies in his system. Attached is the Patient Report, dated August 31, 2021, of his testing for the antibodies he has acquired, which make him immune to the coronavirus. We understand that this is information that you did not have at the time of the denial of his previous request for an exemption from the vaccine. A comprehensive new study that recently came out from Israel conclusively establishes that natural immunity is far more effective than the vaccines in preventing infection. Here is an excerpt about the study from a report by *Science* magazine: "The new analysis relies on the database of Maccabi Healthcare Services, which enrolls about 2.5 million Israelis. The study, led by Tal Patalon and Sivan Gazit at KSM, the system's research and innovation arm, found in two analyses that **people who were vaccinated in January and February were, in June, July, and the first half of August, six to 13 times more likely to get infected than unvaccinated people who were previously infected with the coronavirus. In one analysis, comparing more than 32,000 people in the health system,** the risk of developing symptomatic COVID-19 was 27 times higher among the vaccinated, and the risk of hospitalization eight times higher."

Furthermore, here is an August 31, 2021 quote from R. Scott French, M.D., FACEP, a board certified emergency room physician we have consulted, and who currently treats COVID-19 patients: "Recent articles demonstrate the clinical superiority of immunity for those who have recovered from COVID-19 versus those who received vaccination. Thus, there is no benefit with respect to vaccination for those who have recovered from the COVID-19 infection. There is also unfortunately increasing evidence that there is risk of potential harm for those who have recovered from infection and then receive the vaccine." What follows is the list of the many articles that Dr. French provided in support of his conclusion.

These numerous studies establish, scientifically and medically, that natural immunity is superior to the vaccines:
https://rupress.org/jem/article/218/5/e20202617/211835/Highly-functional-virus-specific-cellular-immune;
https://www.medrxiv.org/content/10.1101/2021.06.01.21258176v3;
https://www.nature.com/articles/s41467-021-24377-1?utm_source=other&utm_medium=other&utm_content=null&utm_campaign=JRCN_1_LW01_CN_natureOA_article_paid_XMOL;
https://www.biorxiv.org/content/10.1101/2021.07.29.454333v1;
https://www.biorxiv.org/content/10.1101/2021.03.22.436441v1;
https://www.thelancet.com/journals/eclinm/article/PIIS2589-5370(21)00141-3/fulltext;
https://www.medrxiv.org/content/10.1101/2021.04.20.21255670v1;
https://www.medrxiv.org/content/10.1101/2021.05.11.21256578v1;
https://www.nature.com/articles/s41586-021-03647-4;

https://papers.ssrn.com/sol3/papers.cfm?abstract_id=3838993;
https://www.cell.com/cell-reports-medicine/fulltext/S2666-3791(21)00203-2#%20;
https://www.biorxiv.org/content/10.1101/2021.07.14.452381v1;https://www.biorxiv.org/content/10.1101/2021.05.12.443888v1;
https://www.medrxiv.org/content/10.1101/2021.08.19.21262111v1;
https://www.ncbi.nlm.nih.gov/pmc/articles/PMC8209951/pdf/RMV-9999-e2260.pdf; https://fee.org/articles/harvard-epidemiologist-says-the-case-for-covid-vaccine-passports-was-just-demolished/.

In addition to the foregoing, it would be an egregious violation of Mr. Gallo's legal rights not to grant him a religious and/or medical exemption under these circumstances especially since he has indicated that he is willing to undergo testing every week for COVID-19, and wear a mask and engage in social distancing when necessary. There is no legal basis to deny him such reasonable accommodations as required by Title VII. See 42 U.S.C. 2000e(j). Recent legal cases have upheld the rights of people seeking religious and medical exemptions under similar circumstances. For example, see this order concerning the recent ruling by a federal judge in favor of college athletes in Michigan: https://www.greatlakesjc.org/wp-content/uploads/Amended-Order-Granting-TRO-WMU.pdf. Closer to home, a professor at George Mason University, near Washington, D.C., was successful in challenging the university's vaccine mandate on the grounds that he already had COVID-19; therefore he had natural immunity which rendered the vaccination to be "medically unnecessary":  https://nclalegal.org/2021/08/george-mason-univ-caves-to-nclas-lawsuit-over-vaccine-mandate-grants-prof-medical-exemption/.

Finally, if the misguided decision to terminate Mr. Gallo is not reversed, we will commence litigation and seek our attorneys' fees when we prevail. See, *Christianburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) (holding that under Title VII prevailing plaintiffs are entitled to reasonable attorneys' fees). In that regard, you might be interested in knowing that our firm was recently awarded $800,000 in attorneys' fees against the State of California and the County of Los Angeles for violating our client's religious liberty rights during the pandemic: https://www.washingtontimes.com/news/2021/sep/1/california-church-wins-800000-covid-19-lawsuit-aga/. That settlement followed our prevailing on this issue before the United States Supreme Court earlier this year in a case that succeeded in opening the churches in California for 40 million people: https://thomasmoresociety.org/client/south-bay-united-pentecostal-church/. In that federal case, and a companion state case, we obtained permanent injunctions against the State of California in both federal and state courts, and we received a combined fee award of $2.15 million: https://www.sandiegouniontribune.com/news/courts/story/2021-06-02/state-covid-19-church-lawsuits.

Finally, please note that we have a national religious liberty law practice, and that after attending Georgetown University Law Center, and working for a law firm in downtown Washington, D.C., I became, and continue to

be, a member of the D.C. Bar. In light of the foregoing, we respectfully request that the Washington Nationals reconsider its decision to terminate the employment of Mr. Gallo who, as you know, has been a dedicated and valued employee of your organization for many years. Mr. Gallo has strong legal grounds for both religious and medical exemptions and he would prefer to continue his employment without having to bring what is sure to be a high-profile and expensive lawsuit against the Washington Nationals. Thank you, Ms. Philpott and Mr. Frost, for your consideration and we look forward to your response.

Sincerely,

Charles S. LiMandri

******************************
**Charles S. LiMandri**
**LIMANDRI & JONNA LLP**
P.O. Box 9120 | Rancho Santa Fe, CA 92067
Tel: (858) 759-9930 | Fax: (858) 759-9938
cslimandri@limandri.com | https://www.limandri.com/


Daily Journal California Lawyer
Attorneys of the Year (CLAY) Award for 2021;
Board Certified in Pre-Trial Practice and
Trial Advocacy by the National Board of Trial Advocacy;
Admitted to Practice in CA, NY, DC, and before the U.S. Supreme Court

This communication (including any attachments) contains confidential information protected by the attorney-client privilege and/or attorney work-product privilege intended only for a specific person(s) or entity(ies) named as the recipient(s). If you are not the intended recipient(s), you should delete this communication and/or shred the materials and any attachments and are hereby notified that any disclosure, copying, use or distribution of this communication, or the taking of any action based in it, is strictly prohibited by law. If you receive this transmission by error, please notify us by telephone immediately. Thank you.



****ATTENTION****

This e-mail contains privileged and confidential information intended exclusively for the use of the addressee(s) named above. If you are not the intended recipient of this e-mail, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, copying or other use of this e-mail and any attachments hereto is strictly prohibited. If you have received this e-mail in error, please notify the sender immediately by telephone and delete this e-mail and any attachments from your system. Thank you.