UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **BERNARD GALLO,** | ) | |
| **Plaintiff,** | ) ) ) | |
| v. | ) ) | Civil No. 22-cv-01092 (APM) |
| **WASHINGTON NATIONALS BASEBALL CLUB, LLC,** | ) ) ) ) | |
| **Defendant.** | ) ) | |

**MEMORANDUM OPINION**

I.  **INTRODUCTION**

For nine years, Plaintiff Bernard Gallo was employed as a Major League Baseball scout by Defendant Washington Nationals Baseball Club, LLC ("Nationals" or "Defendant"). Plaintiff was responsible for scouting potential high school, junior college, and college recruits throughout Southern California and Hawaii. On August 12, 2021, the Nationals instituted a mandatory policy requiring all employees to be fully vaccinated against COVID-19 "unless a reasonable accommodation under the Americans with Disabilities Act ('ADA') or for a sincerely held religious belief has been approved." Plaintiff requested religious and medical accommodations, which Defendant denied.

Plaintiff brings the instant action alleging (1) discrimination based on religion and disability and (2) retaliation under the District of Columbia Human Rights Act ("DCHRA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the ADA. Before the court is Defendant's partial motion to dismiss, which seeks to dismiss Plaintiff's disability discrimination

claims under the DCHRA and the ADA, and his retaliation claims under the DCHRA, Title VII, and the ADA.  Def.'s Mot. for Partial Dismissal, ECF No. 6 [hereinafter Def.'s Mot.].  Defendant has not moved to dismiss Plaintiff's religious discrimination claims under the DCHRA and Title VII.  *Id.*  For the reasons stated below, Defendant's motion is granted in part and denied in part.

## II.     BACKGROUND

On August 12, 2021, Defendant announced a mandatory COVID-19 vaccination policy. Compl., ECF No. 1, ¶ 16. The policy stated that "[a]s a condition of continued employment, all employees are required to be fully vaccinated against COVID-19 unless a reasonable accommodation under the Americans with Disabilities Act (ADA) or for a sincerely held religious belief has been approved." Compl., Ex. A, ECF No. 1-3, at 1.  Employees were required to provide proof of their first shot by August 26, 2021, and their second shot by September 26, 2021.  *Id.* at 3. Employees who failed to receive their first shot by the deadline would "be placed on unpaid administrative leave for up to two weeks, or until they have received the required vaccine." *Id.* at 1.  If an employee failed to provide proof of their first shot after their period of unpaid administrative leave concluded, they would be "discharged from employment." *Id.*

### A.     Plaintiff's Accommodation Request

Plaintiff requested a religious exemption on August 12, 2021, the same day that Defendant announced its vaccination policy.  Compl., Ex. B, ECF No. 1-4.  In response to a question asking Plaintiff to "identify with particularity how vaccination would require [him] to violate or forego a belief or practice of [his] religion," Plaintiff wrote:

> It is my belief this vaccination is not only unnecessary but potentially dangerous.  It has been administered on an EUA [Emergency Use Authorization] and [is] not FDA approved.  In

2

>   addition, my personal faith and in prayer I feel my lord and savior is giving me the <u>freedom</u> to make a <u>choice</u> concerning <u>my</u> body.

*Id.* at 1 (emphasis in original).[1]

On August 25, 2021, Plaintiff discussed his request for accommodation on a short phone call with Defendant. Compl. ¶ 25. Following the call, Defendant's General Counsel sent an email to Plaintiff asking additional questions about his religious beliefs, which Plaintiff answered that day. Compl., Ex. C, ECF No. 1-5. On August 27, 2021, Defendant denied Plaintiff's request for a religious accommodation. Compl. ¶ 27. Defendant wrote:

>   The Company recognizes and respects [Plaintiff's] religious beliefs and would accommodate those beliefs if it could. However, in light of the fact that a fully approved vaccine is now available, and given the nature of your position, duties, and essential functions, your continued performance of your duties without being vaccinated will pose an unacceptable risk to the health of Company employees (including you), customers, visitors, and others with whom you are required to interact in connection with your job duties.

Compl., Ex. D, ECF No. 1-6, at 2.

Because the August 26, 2021, deadline for the first vaccine had passed, Defendant extended the deadline for Plaintiff's first shot to August 31, 2021. *Id.* Defendant informed Plaintiff that if he failed to get his first shot by August 31, he would "be placed on unpaid administrative leave for a period of two (2) weeks," pursuant to the mandatory vaccination policy. *Id.* If Plaintiff failed to receive a shot at the end of his two weeks of unpaid administrative leave, Plaintiff's "employment with the [Nationals would] be terminated due to [his] failure to comply with the [Nationals'] policy." *Id.* Defendant told Plaintiff that the decision could not be appealed. *Id.* at 1.

---

[1] Plaintiff alleges that, in his request for accommodation, he wrote "[r]eceiving the Covid-19 vaccination would violate my sincerely held religious beliefs, practices and/or observances." Compl. ¶ 23. The court does not find this language in his request. *See* Ex. B.

3

Plaintiff did not receive his first shot by August 31 and was "placed on unpaid administrative leave for up to two weeks." Compl., Ex. E, ECF No. 1-7. Defendant reaffirmed that if Plaintiff failed to "provide proof of receiving [his] first shot by the end of the two-week unpaid administrative leave period, [his] employment [would] be terminated effective September 15, 2021 for failure to comply with the Company's policy." *Id.*

B.     **Plaintiff's Medical Exemption Request**

On September 6, 2021, during the two-week unpaid administrative leave period, Plaintiff's counsel emailed Defendant, arguing that the denial of Plaintiff's religious exemption was "unlawful" and, "[f]urthermore, Mr. Gallo should be entitled to receive a medical exemption" "because he has already had COVID-19 and therefore has the protective antibodies in his system." Compl., Ex. F, ECF No. 1-8, at 6, 8; *id.* at 8–9 (arguing that studies "establishe[d] that natural immunity is far more effective than the vaccines in preventing infection"). Regarding the requested religious exemption, Plaintiff's counsel argued that his client's "religious beliefs as a devout Christian prohibit him from having any vaccination." *Id.* at 6. Specifically, Plaintiff is "extremely pro-life," and because "vaccines were manufactured or tested using abortive tissue from fetuses," requiring Plaintiff to take a vaccine would require him to violate his "sincerely held religious belief that abortion is murder." *Id.* at 6–7 ("[I]t is Mr. Gallo's sincerely held religious belief that, in being vaccinated with any of the COVID-19 vaccines, he would be cooperating with and complicit in abortion—the ending of an innocent human life—and that such would constitute a sin against God and a violation of His Commandments, for which he would be held morally accountable by God.").

Defendant issued its response on September 9, 2021. It stated that it "recognize[s] and respect[s] Mr. Gallos' religious beliefs but given the nature of his position, the Nationals cannot

4

accommodate Mr. Gallo's religious beliefs without posing an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties." *Id.* at 5. Defendant noted that "Mr. Gallo had not previously raised a request for a medical exemption," and based on the information provided by his counsel, Defendant "decline[d] to grant Mr. Gallo's request for a medical exemption because prior exposure to COVID-19 does not qualify as a disability under the Americans with Disabilities Act." *Id.*

On September 11, 2021, Plaintiff's counsel responded that Plaintiff's unvaccinated status "poses no significant risk to himself or others" because Plaintiff's job duties do not require him to be in close contact with others in indoor spaces. *Id.* at 3–4. Additionally, Plaintiff "already offered to be tested weekly and his very reasonable request for such an accommodation ha[d] been inexplicably and unreasonably denied by the Washington Nationals." *Id.* at 3. Plaintiff's counsel further argued that Plaintiff's medical exemption should be granted because he "has natural immunity that provides even greater protection to himself and others than does the available vaccines." *Id.* at 4.

Defendant terminated Plaintiff's employment on September 15, 2021. Def.'s Mot., Def.'s Mem. in Supp. of Def.'s Mot., ECF No. 6-2 [hereinafter Def.'s Mem.], at 4; Compl. ¶ 45. The next day, Plaintiff informed Defendant that he intended to file suit. Ex. F at 1–2. Plaintiff filed the instant action on April 20, 2022. *See* Compl.

### III.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept a plaintiff's factual allegations as true and "construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)); Fed. R. Civ. P. 12(b)(6). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, and "the court need not accept inferences [that] . . . are unsupported by the facts set out in the complaint." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

A court reviewing a motion to dismiss may consider "only the facts alleged in the complaint, any documents attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997). Accordingly, the court may consider the exhibits attached to Plaintiff's Complaint. *See Hill v. Bd. of Trs. of the Univ. of the D.C.*, 146 F. Supp. 3d 178, 184 (D.D.C. 2015).

IV.   **DISCUSSION**

A.   **Discrimination Based on Perceived Disability**

Plaintiff brings discrimination claims based on perceived disability under both the DCHRA (Count I) and ADA (Count III). "To demonstrate discrimination in violation of the ADA or the DCHRA, the plaintiff 'must prove that [1] he had a disability within the meaning of the ADA,

6

[2] that he was 'qualified' for the position with or without a reasonable accommodation, and [3] that he suffered an adverse employment action because of his disability.'" *Giles v. Transit Emps. Fed. Credit Union*, 794 F.3d 1, 5 (D.C. Cir. 2015) (quoting *Duncan v. Wash. Metro. Area Transit Auth.*, 240 F.3d 1110, 1114 (D.C. Cir. 2001). An individual is considered "disabled" under the ADA if the individual (1) "has a physical or mental impairment that substantially limits one or more major life activities;" (2) "has a record of such impairment;" or (3) "is regarded [by their employer] as having such an impairment." 42 U.S.C. § 12102(1). Plaintiff's claim rests on the last of these three definitions. Specifically, he contends that the Nationals regarded him as disabled when they made the "assumption" that Plaintiff "could not perform his job duties" because he was unvaccinated. Compl. ¶ 77; *see id.* ¶ 41 (alleging that the Nationals "treated Mr. Gallo as if his health status [being unvaccinated] rendered him dangerous to himself and unable to work, thus regarding him as disabled").

Defendant argues that "Plaintiff has not alleged that the Nationals believed him to have any kind of 'impairment' at all." Def.'s Mem. at 7. He simply "suggests that he is 'disabled' solely by virtue of being unvaccinated." *Id.* at 7 n.4. "To suggest that the mere state of being unvaccinated is a 'physical or mental impairment' within the scope of 42 U.S.C. § 12102(1) is patently absurd," Defendant continues, because "[s]uch a conclusion would mean that every unvaccinated person in the United States is now 'disabled' under the ADA." *Id.*

The court agrees with Defendant. The "regarded as having" prong of the ADA's definition of disability "does not cover [a] case where an employer perceives a person to be presently healthy with only a potential to become ill and disabled in the future." *EEOC v. STME, LLC*, 938 F.3d 1305, 1315 (11th Cir. 2019). The impairment must "exist at the time of the adverse employment action," and so the statute "does not [reach] impairments that manifest after the alleged

7

discrimination." *Id.* Here, Plaintiff does not contend that, at the time of his termination, Defendant perceived him to be unhealthy. Rather, the concern underlying Defendant's policy was that, as an unvaccinated person, Plaintiff might contract COVID-19 in the future and, at that time, endanger his health and the health of those around him. *See* Compl. ¶ 27 (letter denying request for accommodation, stating "your continued performance of your duties without being vaccinated will pose an unacceptable risk to the health of Company employees (including you), customers, visitors, and others with whom you are required to interact in connection with your job duties").

Plaintiff thus has failed to state a "regarded as" disabled claim because he has not alleged that Defendant perceived him to have a disability at the time of his termination. 42 U.S.C. § 12102(1). Every court that has considered this question has held the same. *See, e.g.*, *Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 549–50 (E.D. Va. 2022) (holding that "possible future exposure to COVID-19 [based on age] does not constitute an impairment under the ADA"); *Jorgenson v. Conduent Transp. Sols., Inc.,* No. 22-cv-01648 (SAG), 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (ruling that the employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status—and in some cases, to wear masks—does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); *Shklyar v. Carboline Co.*, No. 22-cv-391 (RWS)*,* 2022 WL 2867073, at *5 (E.D. Mo. July 21, 2022) (reasoning that "to infer that [an employer] regarded [an employee] as having a disability" based on a "generally applicable" COVID-19 mitigation policy "would require inferring that [the employer] regarded all of its . . . employees as having a disability"), *aff'd*, No. 22-2618, 2023 WL 1487782 (8th Cir. Feb. 3, 2023); *Leggo v. M.C. Dean, Inc.*, No. 22-cv-374 (LMB/IDD), 2023 WL 1822383, at *4 (E.D. Va. Feb. 7, 2023) (holding the same and citing *Jorgenson* and *Shklyar*).

8

### B.     Retaliation for Oppositional Conduct

Plaintiff argues that Defendant retaliated against him by placing him on leave and then terminating his employment after he engaged in protected activity in violation of the DCHRA (Count I), Title VII (Count II), and the ADA (Count IV).  Plaintiff contends that he engaged in protected activity when (1) he made his "religious exemption request, which included his objection to Defendant's vaccine policy," Pl.'s Opp'n to Def.'s Mot. for Partial Dismissal, ECF No. 9 [hereinafter Pl.'s Opp'n], at 15, (2) he "continued to object to Defendant's baseless perception of his medical condition," Compl. ¶ 85, and (3) his counsel objected to the denial of Plaintiff's religious and medical exemptions.  Pl.'s Opp'n at 15.

To prove retaliation, a plaintiff must establish that: (1) "he engaged in protected activity," (2) he suffered a materially adverse employment action, and (3) "there [is] a causal link between the protected activity and the adverse [employment] action."  *Woodruff v. Peters*, 482 F.3d 521, 529 (D.C. Cir. 2007).  At this stage, Defendant does not contest the first or second element.  Its argument for dismissal rests on the third.  Defendant contends that "Plaintiff has failed to allege facts that create a plausible inference of a causal connection between his alleged protected activity and the adverse employment actions."  Def.'s Mem. at 13.  Defendant contends that Plaintiff's claim that the Nationals retaliated against him for requesting an exemption and objecting to the policy is not plausible because the Nationals "made it abundantly clear that unvaccinated employees who were not granted accommodations would be placed on two weeks of unpaid leave and then discharged," and the policy was "announced **before** Plaintiff submitted his request for an accommodation."  *Id.* at 14 (emphasis in original).  Because "the Nationals followed the policy to the letter," Defendant argues, "Plaintiff cannot plausibly advance the theory that the Nationals terminated him solely because he requested an accommodation."  *Id.*

9

A plaintiff making a retaliation claim, as here, under Title VII must establish "that his or her protective activity was a but-for cause of the alleged adverse action by the employer." *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 362 (2013); *see also Lyons v. Katy Indep. Sch. Dist.*, 964 F.3d 298, 304 (5th Cir. 2020) (applying but-for causation for a retaliation claim); *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 548 (8th Cir. 2021) (same). A retaliation claim under the ADA and DCHRA, however, may require less than a but-for showing. *See Mosleh v. Howard Univ.*, No. 19-cv-00339 (CJN), 2020 WL 956527, at *7 (D.D.C. Feb. 27, 2020) (noting divergence in the DCHRA caselaw between but-for and motivating-factor causation tests); *Brown v. District of Columbia.*, 928 F.3d 1070, 1098 (D.C. Cir. 2019) (Wilkins, J., concurring) (stating that "circuits are split as to whether . . . the [ADA requires] 'but for' or 'motivating factor' causation," and not taking a position on the causation standard); *Conn v. Am. Nat'l Red Cross*, 149 F. Supp. 3d 136, 142 (D.D.C. 2016) (explaining that the "D.C. Circuit has not spoken directly" on the causation standard for ADA claims).

The court believes it is at least plausible that Defendant terminated Plaintiff for his oppositional conduct. Defendant's policy provided that employees like Plaintiff had to be fully vaccinated against COVID-19 "unless a reasonable accommodation under the [ADA] or for a sincerely held religious belief has been approved." Compl. ¶ 16. Defendant did not question the sincerity of Plaintiff's religious beliefs, yet it did not attempt to accommodate him. *See* Ex. F at 5 ("[T]he Nationals do not dispute Mr. Gallo's religious beliefs."); Ex. D at 2 ("The Company recognizes and respects your religious beliefs and would accommodate those beliefs if it could."). It also did not explain why Plaintiff's willingness to, among other things, mask and test frequently

did not address the team's concerns.[2]  Defendant did put in place its policy before suspending and terminating Plaintiff, but it is at least plausible that the denial of accommodation and subsequent termination was due to Plaintiff's protected acts, rather than the merits of his exemption request. Accordingly, Plaintiff's retaliation claims under the DCHRA, Title VII, and ADA survive dismissal.

## V.    CONCLUSION

For the stated reasons, Defendant's Motion for Partial Dismissal, ECF No. 6, is granted in part and denied in part.  Plaintiff's disability discrimination claims under the DCHRA (Count I) and the ADA (Counts III) are dismissed.  Plaintiff's (1) retaliation claims under all statutes and (2) discrimination claims based on religion under the DCHRA (Count I) and Title VII (Count II) remain.

Dated:  March 10, 2023

Amit P. Mehta
United States District Judge

---

[2]  The court does not mean to suggest that Defendant was required to provide an explanation, only that the absence of one makes a retaliatory motive plausible.