**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BERNARD GALLO** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:22-cv-01092-APM** |
| | : | |
| **WASHINGTON NATIONALS BASEBALL** | : | |
| **CLUB, LLC** | : | |
| | : | |
| **Defendant.** | : | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Pursuant to Local Civil Rule 7(h)(1), the following is a statement of material facts as to which the movant, Plaintiff Bernard Gallo, contends there is no genuine issue:

1.      Plaintiff Bernard Gallo was employed with the Defendant Washington Nationals Baseball Club, LLC in the position of scout from November 1, 2012, to September 15, 2021. ECF No. 13, Answer, ¶13.

2.      On or about August 12, 2021, Defendant announced a company policy requiring full-time employees except for athletes and certain part-time employees to be fully vaccinated against COVID-19. ECF No. 13, Answer, ¶16.

3.      On August 12, 2021, Plaintiff, pursuant to the specific accommodation protocol outlined in Defendant's COVID-19 Vaccination Policy, requested a religious accommodation in the form of an exemption from the policy. ECF No. 13, Answer, ¶22.

4.      On August 27, 2021, Nationals General Counsel Betsy Philpott sent an email to Plaintiff Gallo which stated:

The Washington Nationals have reviewed your request for a religious exemption from its COVID-19 vaccination policy, have considered potential

1

accommodations, and have had the opportunity to discuss the request with you.

Based on our review, the Company must decline to grant your requested religious exemption. The Company recognizes and respects your religious beliefs and would accommodate those beliefs if it could. However, in light of the fact that a fully approved vaccine is now available, and given the nature of your position, duties, and essential functions, your continued performance of your duties without being vaccinated will pose an unacceptable risk to the health of Company employees (including you), customers, visitors, and others with whom you are required to interact in connection with your job duties.

ECF No. 1, Complaint, ¶27; ECF No. 1-6, Complaint Ex. D, p.2; ECF No. 13, Answer, ¶27.

5.      On September 1, 2021, Plaintiff Gallo was placed on administrative leave and informed he would be terminated effective September 15, 2021, for failure to comply with the COVID-19 vaccination policy. ECF No. 1, Complaint, ¶35; ECF No. 1-7, Complaint Ex. E; ECF No. 13, Answer, ¶35.

6.      Counsel for Plaintiff Gallo (Charles LiMandri) followed-up with General Counsel Philpott in early September. In an email dated September 6, 2021, Mr. LiMandri began by explaining the bases for Plaintiff Gallo's religious objection to COVID-19 vaccination. In response, in an email dated September 9, 2021, General Counsel Philpott stated:

We have had a chance to review your email and the other documents that you provided to us regarding Mr. Gallo's requests for exemptions from the Nationals' vaccine policy. In connection with Mr. Gallo's request for a religious exemption, the Nationals do not dispute Mr. Gallo's religious beliefs. As we have previously stated, we recognize and respect Mr. Gallos' religious beliefs but given the nature of his position, the Nationals cannot accommodate Mr. Gallo's religious beliefs without posing an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties.

ECF No. 1, Complaint, ¶41; ECF No. 1-8, Complaint Ex. F, p.5; ECF No. 13, Answer, ¶41.

7.  In an email dated September 11, 2021, Mr. LiMandri responded to General Counsel Philpott and stated:

> Since the legitimacy of Mr. Gallo's request for a religious exemption is not at issue, the burden falls on the Washington Nationals to actually establish that it would constitute an "undue hardship" for the company to reasonably accommodate his request for a religious exemption. The Washington Nationals has not even attempted to do so and can not do so in this case.

ECF No. 1, Complaint, ¶41; ECF No. 1-8, Complaint Ex. F, p.2; ECF No. 13, Answer, ¶41.

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BERNARD GALLO** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:22-cv-01092-APM** |
| | : | |
| **WASHINGTON NATIONALS BASEBALL** | : | |
| **CLUB, LLC** | : | |
| | : | |
| **Defendant.** | : | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S
MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES now Plaintiff Bernard Gallo, and moves for Partial Summary Judgment, pursuant to Fed. R. Civ. P. 56(a), on the issue of whether Plaintiff's inability to receive a COVID-19 vaccination was based on a sincerely held religious belief. This issue is an element of Plaintiff's *prima facie* case, and its alleged absence is raised as Defendant Washington Nationals Baseball Club, LLC's second affirmative defense.

## I.     FACTS MATERIAL TO PLAINTIFF'S MOTION

Plaintiff Bernard Gallo was employed with the Defendant Washington Nationals Baseball Club, LLC in the position of scout from November 1, 2012, to September 15, 2021. Material Fact #1 (citing ECF No. 13, Answer, ¶13). On or about August 12, 2021, Defendant announced a company policy requiring full-time employees except athletes and certain part-time employees to be fully vaccinated against COVID-19. Material Fact #2 (citing ECF No. 13, Answer, ¶16). On August 12, 2021, Plaintiff, pursuant to the specific accommodation protocol outlined in Defendant's COVID-19 Vaccination Policy, requested a religious accommodation in the form of an exemption from the policy. Material Fact #3 (citing ECF No. 13, Answer, ¶22).

On August 27, 2021, Nationals General Counsel Betsy Philpott sent an email to Mr. Gallo in which she said *inter alia* that the organization "recognizes and respects [Mr. Gallo's] religious beliefs and would accommodate those beliefs if it could." Material Fact #4 (citing ECF No. 1-6, Ex. D, p. 2). On September 1, 2021, Plaintiff Gallo was placed on administrative leave and informed he would be terminated effective September 15, 2021, for failure to comply with the COVID-19 vaccination policy. Material Fact #5 (citing ECF No. 1-7, Ex. E). Later, on September 9, 2021, Ms. Philpott reiterated this in an email to Mr. Gallo's counsel, repeating and confirming that "the Nationals do not dispute Mr. Gallo's religious beliefs." Material Fact #6-7 (citing ECF No. 1-8, Ex. F, p. 2).

## II.    PROCEDURAL HISTORY MATERIAL TO PLAINTIFF'S MOTION

On April 20, 2022, Plaintiff Bernard Gallo filed his Complaint in this action against Defendant Washington Nationals Baseball Club, LLC (hereafter "the Nationals"). ECF No. 1. Therein, Mr. Gallo asserted four claims for: (1) religious discrimination, disability discrimination, and retaliation in violation of the District of Columbia Human Rights Act, *id.*, ¶¶ 50-60; (2) religious discrimination and retaliation in violation of Title VII, *id.*, ¶¶ 61-70; (3) discrimination on the basis of perceived disability in violation of the Americans with Disabilities Act, *id.*, ¶¶ 71-81; and (4) retaliation in violation of the Americans with Disabilities Act, *id.*, ¶¶ 82-89.

On June 28, 2022, the Nationals filed a partial Rule 12(b)(6) motion to dismiss, attacking solely the disability and retaliation claims. ECF No. 6. On March 10, 2023, this Court granted that motion in part, and denied it in part—dismissing the disability claims under the District of Columbia Human Rights Act and the Americans with Disabilities Act,

but allowing the retaliation claims to proceed. ECF No. 12; 2023 WL 2455678. On March 24, 2023, the Nationals Answered the Complaint. ECF No. 13.

In their Answer, filed March 24, 2023, the Nationals did not deny the authenticity of the emails of August 27 and September 9, 2021 and objected solely that the correspondence "speaks for itself." ECF No. 13, ¶¶ 27, 41. However, the Nationals did raise under its "Second Defense" that "Plaintiff's claims are barred … because the Plaintiff does not have a sincerely held religious belief … that conflict[s] with the Defendant's vaccination policy." *Id*., p.16.[1]

On May 4, 2023, this Court held the initial scheduling conference and set the pre-trial schedule. ECF No. 17. During discovery, it became clear that the Nationals intend to dispute the sincerity of Mr. Gallo's religious beliefs, or at least dispute that Mr. Gallo has met his burden of proof regarding this element of his claim. Mr. Gallo now moves for partial summary judgment on that issue.

### III.   STANDARD OF REVIEW

Summary judgment should be granted "if the "movant [through pleadings, the discovery and disclosure materials on file, and any affidavits] show(s) that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Partial summary judgment is appropriate where no

---

[1] The Nationals' new-found interest in the sincerity of Plaintiff Gallo's religious beliefs in its March Answer, over 18 months after their emails expressly not questioning the sincerity of his religious beliefs, may be explained by the Supreme Court's grant of *certiorari* in *Groff v. DeJoy*, in January of 2023, which threatened seriously to undermine their other defenses. *See Groff*, 600 U.S. 447 (2023) (granting *certiorari*). Ultimately, their fears were realized when the Supreme Court clarified on June 29, 2023, the "undue burden" analysis in a fashion that renders the Nationals' undue burden defense untenable.  Defendant's discovery inquiring into Mr. Gallo's religious beliefs was served in July.

genuine issue of material fact exists regarding a part or an element of a party's claim. *See id.* Plaintiffs can move for partial summary judgment on any part of their claims. *See, e.g., Lindh v. Warden, Fed. Corr. Inst., Terre Haute, Ind.*, No. 2:09-CV-215, 2013 WL 139699, at *9 (S.D. Ind. Jan. 11, 2013) (recounting procedural history of "enter[ing] partial summary judgment in Mr. Lindh's favor on th[e] ground" that "daily group prayer is a religious exercise motivated by Mr. Lindh's sincerely held religious beliefs"). Plaintiffs can also move for partial summary judgment on affirmative defenses. *See, e.g., EEOC v. Abercrombie & Fitch Stores, Inc.*, 966 F. Supp. 2d 949, 965 (N.D. Cal. 2013) (granting partial summary judgment striking "undue hardship affirmative defense").

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, including identifying portions of the record that show the absence of a genuine issue of material fact, the burden shifts to the person opposing the motion to controvert that showing "with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). A dispute about a material fact is "genuine" if the nonmovant presents evidence "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[M]erely colorable" evidence or evidence that is not sufficiently probative does not create a genuine dispute of material fact. *Id.* at 249-50.

## IV.   ARGUMENT

### A. Background Legal Principles on the *Bona Fide* Religious Belief Inquiry.

"To establish a *prima facie* case for religious discrimination under a failure-to-

accommodate theory, an employee must show (1) [he] had a *bona fide* religious belief, the practice of which conflicts with an employment duty; (2) [he] informed [his] employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected [him] to an adverse employment action because of [his] inability to fulfill the job requirement." *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *1 (9th Cir. May 15, 2023) (COVID-19 vaccine mandate); *see Taub v. FDIC*, No. 96–5139, 1997 WL 195521, at *1 (D.C. Cir. Mar. 31, 1997) (citing, but not formally adopting, this test); *Lemmons v. Georgetown Univ. Hosp.*, 431 F. Supp. 2d 76, 95 (D.D.C. 2006) (citing cases applying this test from the Second, Third, Fourth, Fifth, and Eighth Circuits). If this *prima facie* case is met, the burden shifts to the employer to establish that "to accommodate the religious practice of their employees … would impose an 'undue hardship on the conduct of the employer's business.'" *Groff v. DeJoy*, 600 U.S. 447, 453–54 (2023) (quoting 42 U.S.C. § 2000e(j)).[2]

With respect to the plaintiff's *prima facie* case, "[a] court's inquiry is limited to focusing upon the individual's motivation. Specifically, a court's task is to decide 'whether [the individual's beliefs] are, *in his own scheme of things*, religious.'" *Davis v. Fort Bend Cnty.*, 765 F.3d 480, 485 (5th Cir. 2014) (quoting *United States v. Seeger*, 380 U.S. 163, 185 (1965)) (original emphasis and alterations). Courts use same "standard for sincerity under Title VII as that used in free exercise cases." *Philbrook v. Ansonia Bd. of Educ.*, 757 F.2d 476, 481-82 (2d Cir. 1985), *aff'd & remanded*, 479 U.S. 60 (1986).

---

[2] The analysis in this brief focuses on Title VII but encompasses the D.C. Human Rights Act because "[e]mployment discrimination claims under the D.C. Human Rights Act are analyzed using the same legal framework as federal employment discrimination claims under Title VII." *Jackson v. D.C.*, 783 F. Supp. 2d 9, 11 (D.D.C. 2009) (citing *McFarland v. George Wash. Univ.*, 935 A.2d 337, 346 (D.C. 2007)).

"[A] coincidence of religious and secular claims in no way extinguishes the weight appropriately accorded the religious one." *Callahan v. Woods*, 658 F.2d 679, 684 (9th Cir. 1981). "The statute thus leaves little room for a party to challenge the religious nature of an employee's professed beliefs." *EEOC v. Union Independiente de la Autoridad de Acueductos*, 279 F.3d 49, 56 (1st Cir. 2002). To engage in this inquiry, the analysis "is often broken down into two smaller elements; that is, (1) is the belief sincerely held, and (2) is the belief religious in nature, in the claimant's scheme of things." *Leeck v. Lehigh Valley Health Network*, No. 5:22-CV-4634, 2023 WL 4147223, at *4 (E.D. Pa. June 23, 2023) (COVID-19 vaccine mandate) (citing *Africa v. Pennsylvania*, 662 F.2d 1025, 1029 (3d Cir. 1981)); *see also Redmond v. GAF Corp.*, 574 F.2d 897, 901 n.12 (7th Cir. 1978).

Under the first inquiry, courts must engage in the "light touch" of solely determining whether the plaintiff's assertion is "credible." *Sambrano v. United Airlines, Inc.*, No. 21-11159, 2022 WL 486610, at *1 n.2 (5th Cir. Feb. 17, 2022) (COVID-19 vaccine mandate) (quoting *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013); *Moussazadeh v. Texas Dep't of Crim. Just.*, 703 F.3d 781, 792 (5th Cir. 2012)). This is because courts "may not ... question the *legitimacy* of [the plaintiff's] religious beliefs regarding COVID-19 vaccinations." *Keene*, 2023 WL 3451687, at *2 (quoting *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1176 n.3 (9th Cir. 2021) (COVID-19 vaccine mandate)) (emphasis added), "[t]o examine religious convictions any more deeply would stray into the realm of religious inquiry, an area into which we are forbidden to tread." *Moussazadeh*, 703 F.3d at 792 & n.8 (citing *United States v. Ballard*, 322 U.S. 78, 86-87 (1944) ("Men may believe what they cannot prove. They may not be put to the proof of their religious doctrines or beliefs.")).

Under the second inquiry, "[s]incere beliefs, meaningful to the believer, need not be confined in either source or content to traditional or parochial concepts of religion." *Ali v. S.E. Neighborhood House*, 519 F. Supp. 489, 490 (D.D.C. 1981). "'Intensely personal' convictions which some may find 'incomprehensible' or 'incorrect' fit within the framework of 'religious belief.'" *Id*. (quoting *Seeger*, 380 U.S. at 165). "The test 'is whether a given belief that is sincere and meaningful occupies a place in the life of its possessor parallel to that filled by the orthodox belief in God.'" *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 448 (7th Cir. 2013) (quoting *Seeger*, 380 U.S. at 165-66).

Further, "[d]etermining whether a belief is religious is 'more often than not a difficult and delicate task,' one to which the courts are ill-suited." *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 132 (1st Cir. 2004) (quoting *Thomas v. Review Bd. of Indiana Employment Sec. Div.*, 450 U.S. 707, 714 (1981)). Thus, "the claim of the registrant that his belief is an essential part of a religious faith must be given great weight." *Adeyeye*, 721 F.3d at 448 (quoting *Seeger*, 380 U.S. at 184).

In light of the constitutionally mandated judicial deference, at base, the inquiry is solely to "differentiat[e] between those beliefs that are held as a matter of conscience and those that are animated by motives of deception and fraud." *Philbrook*, 757 F.2d at 482. Only "sham[]" assertions, where the plaintiff "mask[s] the cause in religious garb" to obtain protection, should be precluded. *Callahan*, 658 F.2d at 683-84. Going further risks drawing the court into a "bizarre inquisition." *Sambrano*, 2022 WL 486610, at *1 n.2; *accord Millington v. Fed. Rsrv. Bank of Minneapolis*, No. A22-1369, 2023 WL 3939525, at *4 (Minn. Ct. App. June 12, 2023) (judge's finding that objection to COVID-19 vaccination was not religious because also supported by personal beliefs that vaccine

was not safe and was unnecessary, was not supported by substantial evidence). Thus, as the EEOC explains, "the sincerity of an employee's stated religious belief is usually not in dispute and is 'generally presumed or easily established.'" EEOC, Compliance Manual on Religious Discrimination § 12-I(A)(2) (Jan. 15, 2021)[3] (quoting *Moussazadeh*, 703 F.3d at 790).

### B. Background on Equitable Doctrines of Waiver, Estoppel, and Forfeiture.

The elements of waiver are (1) "an existing right;" (2) "knowledge of the right;" and (3) "an actual intention to relinquish the right." 28 Am. Jur. 2d Estoppel and Waiver § 187; *see United States v. Laslie*, 716 F.3d 612, 614 (D.C. Cir. 2013). "Although *waiver* and *estoppel* are closely akin, and the terms 'estoppel' and 'waiver' are often loosely used interchangeably, nevertheless, they are separate doctrines." 28 Am. Jur. 2d Estoppel and Waiver § 35 (emphasis added).

> Specifically, with regard to the distinctions between waiver and estoppel, a waiver is the intentional abandonment or relinquishment of a known right, … whereas an equitable estoppel may arise even though there was no intention on the part of the party estopped to relinquish or change any existing right. The intent to relinquish a right is a necessary element of waiver but not of estoppel while detrimental reliance is a necessary element of estoppel but not of waiver…. Prejudice to the other party is one of the essential elements of an equitable estoppel whereas a waiver does not necessarily imply that the party asserting it has been misled to their prejudice or into an altered position.

*Id*. Similarly, *waiver* and *forfeiture* are also distinct concepts. "Whereas forfeiture is the failure to make a timely assertion of a right, waiver is the intentional relinquishment of a known right." *United States v. Laslie*, 716 F.3d 612, 614 (D.C. Cir. 2013) (quoting *United*

---

[3] https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination, *last accessed* October 23, 2023.

*States v. Olano*, 507 U.S. 725, 733 (1993)) (waiver of right to object to criminal enhancement).

In considering *waiver*, the "actual intention" to forgo a right can be established in numerous ways. *See* 28 Am. Jur. 2d Estoppel and Waiver § 194. "Evidence for waiver typically takes one of three forms: 1) evidence of an express renunciation of a known right; 2) evidence of silence or inaction with respect to a known right for a period of time sufficient to indicate an intention to waive; or 3) conduct of a party knowingly possessing a right of such a nature as to mislead the other party into an honest belief that a waiver was intended or assented to." *Cecil Pond Const. Co. v. Ed Bell Invs., Inc.*, 864 S.W.2d 211, 215 (Tex. App. 1993). An express waiver is generally dispositive because "one cannot prevent a waiver by a private mental reservation contrary to an intent to waive, where his or her actions clearly indicate such an intent." *B.R. Woodward Mktg., Inc. v. Collins Food Serv., Inc.*, 754 P.2d 99, 103 (Utah Ct. App. 1988).

Thus, unlike in considering estoppel, "a federal court assessing waiver does not generally ask about prejudice. Waiver, we have said, 'is the intentional relinquishment or abandonment of a known right.' [citation]. To decide whether a waiver has occurred, the court focuses on the actions of the person who held the right; the court seldom considers the effects of those actions on the opposing party." *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022) (quoting *Olano*, 507 U.S. at 733) (waiver of contractual right to compel arbitration). Further, unlike in considering forfeiture, "a federal court does not have *carte blanche* to depart from the principle of party presentation basic to our adversary system." *Wood v. Milyard*, 566 U.S. 463, 472 (2012). Unlike with forfeiture, with waiver, it is "an abuse of discretion … for a court to override a … deliberate waiver." *Id.* (quoting *Day v.*

*McDonough*, 547 U.S. 198, 202 (2006)) (waiver of statute of limitations); *accord NLRB v. Las Vegas Sand & Gravel Corp.*, 368 U.S. 400 (1962) (per curiam) (summarily reversing *sua sponte* judicial modification of waiver).

All substantive rights are presumptively subject to waiver: "[A]bsent some affirmative indication of Congress' intent to preclude waiver, we have presumed that statutory provisions are subject to waiver." *United States v. Mezzanatto*, 513 U.S. 196, 201 (1995) (waiver of exclusionary provisions of plea-statement rules); *see Price v. U.S. Dep't of Just. Att'y Off.*, 865 F.3d 676, 679 (D.C. Cir. 2017) (waiver of use of FOIA); *Deptula v. Simpson*, 164 P.3d 640, 644 (Alaska 2007) (waiver of statutory disclosures during property sale); *Rosado v. Bridgeport Roman Cath. Diocesan Corp.*, 970 A.2d 656, 690 (Conn. 2009) (waiver of statutory clergyman's privilege); *Smith v. Freeman*, 902 N.E.2d 1069, 1075 (Ill. 2009) (waiver of right to re-trial before same judge).

All equitable "doctrines like waiver and estoppel ensure efficiency and fairness by precluding parties from raising arguments they had previously disavowed." *Wilkins v. United States*, 598 U.S. 152, 158 (2023). More specifically, "[t]he doctrine of waiver serves to avoid a harsh result when the parties have conducted themselves in such a way as to make that result unfair. It serves to prevent a party from insisting on a right upon which he could have insisted earlier but has been found to have surrendered." *In re Ellipsat, Inc.,* 480 B.R. 1, 5 (Bankr. D.D.C. 2012) (quotation marks omitted). Similarly, a defendant can "waiv[e] its right to demand proof" on an element of a claim. *Gaughan v. Crawford*, No. 05 C 4664, 2008 WL 11517352, at *2 (N.D. Ill. July 24, 2008); *accord United States v. Laslie*, 716 F.3d 612, 615 (D.C. Cir. 2013) ("Upon entering into a

stipulation on an element, a defendant waives his right to put the government to its proof of that element.").

"[W]here the only evidence as to waiver is a writing, its construction and interpretation and whether or not it constitutes a waiver is a question of law for the court." *Griffin v. United States*, 500 F.2d 1059, 1072 (3d Cir. 1974) (quoting *Hanover Const. Co. v. Fehr*, 392 Pa. 199, 202 (1958)).

### C. Application of the Law to the Facts: The Nationals Waived Any Right to Contest Plaintiff Gallo's Religious Sincerity

At base, the question presented by this motion is very straightforward. Did the Nationals waive their right to contest whether Plaintiff Gallo's objection to COVID-19 vaccination was based on a sincerely held religious belief? Stated differently, did the Nationals "intentional[ly] relinquish[] or abandon[] [their] known right" to challenge the sincerity and religious nature of Plaintiff Gallo's objection to COVID-19 vaccination? *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022). The analysis may seem suspiciously simple, but that is simply because few employers are brazen enough to make as direct an about-face as the Nationals have attempted to do here.

As stated above, on August 27, 2021, Nationals General Counsel Betsy Philpott, acting on the Nationals' behalf, sent the following email[4] to Mr. Gallo:

> The Washington Nationals have reviewed your request for a religious exemption from its COVID-19 vaccination policy, have considered potential accommodations, and have had the opportunity to discuss the request with you.
>
> Based on our review, the Company must decline to grant your requested religious exemption. ***The Company recognizes and respects your***

---

[4] Of course, the emails are admissible as party admissions. *See, e.g., Stepp v. Covance Cent. Lab'y Servs., Inc.*, 931 F.3d 632, 636 n.† (7th Cir. 2019); *Ritchie v. Napolitano*, 196 F. Supp. 3d 54, 65 (D.D.C. 2016); Fed. R. Evid. 801(d)(2).

***religious beliefs and would accommodate those beliefs if it could.***
However, in light of the fact that a fully approved vaccine is now available,
and given the nature of your position, duties, and essential functions, your
continued performance of your duties without being vaccinated will pose an
unacceptable risk to the health of Company employees (including you),
customers, visitors, and others with whom you are required to interact in
connection with your job duties.

Material Fact #4; ECF No. 1-6, p.2 (emphasis added). In plain interpretation, the gist of
these remarks is that while the Nationals agreed that Plaintiff Gallo's sincerely held
religious beliefs conflicted with their vaccine requirements, they did not intend to
accommodate his beliefs.

Counsel for Plaintiff Gallo (Charles LiMandri) followed-up with General Counsel
Philpott in early September. In an email dated September 6, 2021, Mr. LiMandri began
by explaining the bases for Plaintiff Gallo's religious objection to COVID-19 vaccination,
quoting the Bible at length, including 1 Corinthians 6:19-20,[5] Jeremiah 1:4-5,[6] Psalm
139:13-16,[7] Exodus 20:14,[8] as well as the Didache[9] and early Christian Fathers
Athenagoras[10] and Tertullian.[11] ECF No. 1-8, at pp.6-10.

---

[5] "Or do you not know that your body is a temple of the Holy Spirit within you, whom you
have from God? You are not your own, for you were bought with a price. So glorify God
in your body."
[6] "The word of the Lord came to me, saying, 'Before I formed you in the womb I knew
you, before you were born I set you apart; I appointed you as a prophet to the nations.'"
[7] "For you created my inmost being; you knit me together in my mother's womb. I praise
you because I am fearfully and wonderfully made; your works are wonderful, I know that
full well. My frame was not hidden from you when I was made in the secret place, when
I was woven together in the depths of the earth. Your eyes saw my unformed body; all
the days ordained for me were written in your book before one of them came to be."
[8] "You shall not murder."
[9] "[D]o not abort a foetus or kill a child that is born."
[10] "[W]e say that those women who use drugs to bring on abortion commit murder, and
will have to give an account to God for the abortion."
[11] "Murder being once for all forbidden, we [Christians] may not destroy even the fetus in
the womb, . . ."

In response, in an email dated September 9, 2021, General Counsel Philpott stated:

> We have had a chance to review your email and the other documents that you provided to us regarding Mr. Gallo's requests for exemptions from the Nationals' vaccine policy. ***In connection with Mr. Gallo's request for a religious exemption, the Nationals do not dispute Mr. Gallo's religious beliefs. As we have previously stated, we recognize and respect Mr. Gallos' religious beliefs*** but given the nature of his position, the Nationals cannot accommodate Mr. Gallo's religious beliefs without posing an unacceptable risk to Nationals employees and individuals that Mr. Gallo is required to interact with in connection with his job duties.

Material Fact #6; ECF No. 1-8, at p.5 (emphasis added).

Finally, in an email dated September 11, 2021, Mr. LiMandri, quoted the above before stating:

> ***Since the legitimacy of Mr. Gallo's request for a religious exemption is not at issue***, the burden falls on the Washington Nationals to actually establish that it would constitute an "undue hardship" for the company to reasonably accommodate his request for a religious exemption. The Washington Nationals has not even attempted to do so and can not do so in this case.

Material Fact #7; ECF No. 1-8, at p.2 (emphasis added). Mr. LiMandri then provided a lengthy analysis of the "undue burden" standard that the Nationals would need to meet. *Id*., pp.2-4.[12]  The Nationals never rebutted, nor responded in any way, to Mr. LiMandri's September 11 email.

---

[12] Even absent General Counsel Philpott's affirmative statements of her own, Mr. LiMandri's statements suffice to be an admission by the Nationals. *See United States v. Kelly*, 119 F. Supp. 217, 221-22 (D.D.C 1954) ("Where accusatory statements are made in [a party's] presence or hearing, … not only silence but also an evasive answer or one unresponsive to the statement may be the basis for an inference of acquiescence.").

General Counsel Philpott's repeated emphatic assertions amount to an acknowledgement on the part of the Nationals that Plaintiff Gallo's sincerely held religious beliefs conflicted with the Nationals' vaccine requirements.

The multiple statements by General Counsel Philpott cannot be interpreted as anything other than an intentional relinquishment of a known right. Nor should this be deemed an implausible result. In fact, as stated above, waiver is the norm in Title VII claims: "[T]he sincerity of an employee's stated religious belief is usually not in dispute and is generally presumed." *Keene v. City & Cnty. of San Francisco*, No. 22-16567, 2023 WL 3451687, at *2 (9th Cir. May 15, 2023) (COVID-19 vaccine). To allow the Nationals to backtrack now would be fundamentally "unfair" and a "harsh result" to Plaintiff Gallo *See In re Ellipsat, Inc.,* 480 B.R. 1, 5 (Bankr. D.D.C. 2012).

### D. Application of the Law to the Facts: The Nationals Either Forfeited their Right to Contest Plaintiff Gallo's Religious Sincerity, or Should Be Estopped from Asserting that Right

Above, Plaintiff Gallo distinguished the equitable doctrines of waiver and estoppel to make clear that he need not establish either that he suffered "detrimental reliance," *see In re Burrough's Est.*, 475 F.2d 370, 373 (D.C. Cir. 1973); *Parker v. Sager*, 174 F.2d 657, 661 (D.C. Cir. 1949) (equitable estoppel); or that the Nationals "sought and received … [a] benefit" from its taking the position it did. *See Adams v. D.C.*, 50 F. Supp. 3d 47, 56 (D.D.C. 2014) (judicial estoppel).[13] Plaintiff Gallo also distinguished waiver and forfeiture,

---

[13] As implied by its name, "judicial estoppel" usually applies in the context where a party changes its position in the middle of litigation. In that context, this element is phrased as whether "the party succeeded in persuading a court to accept that party's earlier position." *See Moses v. Howard Univ. Hosp.*, 606 F.3d 789, 798 (D.C. Cir. 2010). But the reasoning of judicial estoppel can apply to pre-litigation activity, in which case the element is slightly modified. *See Oscar Mayer Foods Corp. v. ConAgra, Inc.*, 45 F.3d 443 (Fed. Cir. 1994)

which is "the failure to make a timely assertion of a right." *United States v. Laslie*, 716 F.3d 612, 614 (D.C. Cir. 2013). But even under the equitable doctrines of "estoppel" and "forfeiture," the Nationals should be held fast to their statements.

Title VII "involves an interactive process that requires participation by both the employer and the employee." *Thomas v. Nat'l Ass'n of Letter Carriers*, 225 F.3d 1149, 1155 (10th Cir. 2000); *accord Rashad v. Washington Metro. Area Transit Auth.*, 945 F. Supp. 2d 152, 163 (D.D.C. 2013) (noting that the defendant "engaged in an extensive interactive process to accommodate" the plaintiff). "Failure to confer with the employee is not an independent violation of Title VII." EEOC, Compliance Manual on Religious Discrimination § 12-IV(A)(2) (Jan. 15, 2021). But, if an employer fails to do so, he is generally precluded from using after-acquired evidence to make his case in court:

> There is no evidence that, between that date and Taylor's dismissal, Arlington made any effort to find a way to avoid the collision. Mechanic Dana Justice testified that he would have exchanged shifts had he been asked to do so. Abraham acknowledged that he never told Taylor he could switch shifts with Justice if the latter were willing, nor did he discuss the matter with Justice. At a minimum, Arlington had an obligation to explore a voluntary waiver of seniority rights before terminating Taylor. *After failing to pursue this or any other reasonable accommodation, the company is in no position to argue that it was unable to accommodate reasonably his religious needs without undue hardship on the conduct of its business.*

*EEOC v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) (emphasis added); *accord EEOC v. Texas Hydraulics, Inc.*, 583 F. Supp. 2d 904, 912 (E.D. Tenn. 2008) (denying defense's summary judgment: "Defendant has failed to put forth adequate evidence showing that it considered various accommodations and rejected them because they would have caused undue hardship.").

---

("[T]the party against whom estoppel is being asserted must have received some benefit from its previous position, i.e., it 'won.'").

The district court found, as a matter of fact, that Ithaca had made no specific effort to accommodate Dean. *This absolute lack of effort at accommodation by the employer distinguishes this case from our previous case[s]*.… In *Jordan*, a prospective employee demanded that she be guaranteed that she would never have to work on her Sabbath if she were to accept employment. There was evidence presented that the employer made some offers of accommodation to Jordan which she refused. This Court subsequently ruled that any further accommodations would constitute an undue hardship…. *[Here,] Ithaca made no effort to accommodate Dean by any of the methods suggested by the guidelines in the regulations. [citation] We therefore conclude that Ithaca did violate the Civil Rights Act by discriminating against Dean.*

*EEOC v. Ithaca Indus., Inc.*, 849 F.2d 116, 118 (4th Cir. 1988) (en banc) (emphasis added); *accord EEOC v. Triangle Catering, LLC*, No. 5:15-CV-16, 2017 WL 818261, at *9 (E.D.N.C. Mar. 1, 2017) ("[W]here defendant made no effort to accommodate Reddick's beliefs prior to his termination, defendant did not reasonably accommodate Reddick's religious beliefs").

Hacienda made no effort whatsoever to accommodate the religious beliefs of both these women. Alicia Castro admitted that she never asked any maid if they would volunteer to work nor did she make any effort to rearrange the schedule of the maids according to the religious needs of the employees within the housekeeping department…. Hacienda argues, however, that it could not accommodate the women's religious beliefs because any attempt at accommodation would have caused undue hardship on its business…. *[However,] at a minimum, the employer was required to negotiate with the employee in an effort reasonably to accommodate the employee's religious beliefs*…. In the instant case, the district court found that Hacienda did nothing to solve the problem.

*EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1513 (9th Cir. 1989) (emphasis added); *overruled on other grounds as stated in Rivera v. NIBCO, Inc.*, 364 F.3d 1057, 1064 n.4 (9th Cir. 2004).[14]

---

[14] In the Ninth Circuit, the employer need not engage in the interactive process if it can show that "any accommodation would impose undue hardship." *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1440 (9th Cir. 1993). But, of course, the evidence supporting this must be

19

In line with these cases, in September 2023, the EEOC sued a retail seller for refusing to provide a reasonable accommodation for a religious objection to COVID-19 vaccination. In the Complaint, the EEOC focuses primarily on the retailer's refusal to participate in the "interactive process":

> 16. On or about August 6, 2021, O'Neal told HFI she had sincerely held religious beliefs that would not allow her to take the COVID-19 vaccine and stated she wanted a religious exemption to the vaccination requirement….

> 20. Because HFI continued to ignore O'Neal's verbal requests for accommodation, she told HFI she planned to submit a written request for religious accommodation and asked whether HFI had a particular form she should use.

> 21. HFI did not respond to O'Neal's request….

> 24. On or about August 26, 2021, O'Neal submitted a written request for religious accommodation to HFI citing Title VII and listing her sincerely held Christian beliefs which precluded her from being vaccinated against COVID-19.

> 25. HFI ignored O'Neal's written request for religious accommodation….

> 30. On or about October 31, 2021, HFI terminated O'Neal's employment due to her failure to be vaccinated against COVID-19.

> 31. The effect of the practices complained of in Paragraph Nos. 10 through 30 has been to deprive O'Neal of equal employment opportunities and otherwise adversely affect her status as an employee because of her religion.

Complaint, *EEOC v. Hank's Furniture, Inc.*, No. 3:23-cv-24533 (N.D. Fla., Sep. 19, 2023).[15]

The Courts in *Arlington Transit Mix* (Sixth Circuit), *Ithaca Industries* (Fourth

---

known to the employer at the time it foregoes the interactive process. It cannot forgo the interactive process on the speculation that it may later be able to establish an undue hardship. *See id.*

[15] *See also* https://www.eeoc.gov/newsroom/eeoc-sues-hanks-furniture-religious-discrimination, last accessed on October 24, 2023.

Circuit), and *Hacienda Hotel* (Ninth Circuit), do not explain the rationale for their holdings—whether waiver, estoppel, or forfeiture. However, the results cannot be explained on the basis of waiver because there was no intentional relinquishment of a known right. They can only be explained on the bases of estoppel and forfeiture.

In practice, the "interactive process" by which an employer and employee negotiate a religious accommodation creates a quasi-adjudicative proceeding that provides a distinct benefit to the employee—a right to be heard and considered. If the employer short-circuits that proceeding, in practice, the Courts hold any harm from doing so against the employer. The same should be true here. The Nationals, having made preliminary inquiries into Plaintiff Gallo's religious beliefs, said they were satisfied that his beliefs were sincere. If the Nationals actually doubted the sincerity of Plaintiff Gallo's religious beliefs (instead of merely raising sincerity as a litigation gambit), or if they doubted that his beliefs prevented him from being vaccinated, the interactive process was the time to look into the matter further. Having decided to forgo that opportunity, they cannot now re-initiate the process in order to rationalize their decision *post hoc*. That ship has sailed. Under the reasoning of *Arlington Transit Mix*, *Ithaca Industries*, and *Hacienda Hotel*, the Nationals are not permitted to cut short the informal proceedings of the "interactive process" and later, in litigation, try to make up for their decision.

## V.   CONCLUSION

For the reasons set forth above, Plaintiff Bernard Gallo respectfully requests that the Court enter partial summary judgment in his favor on the issue that he had and has a sincere religious objection to COVID-19 vaccination. The Nationals' insistence on litigating religious sincerity is, as the Fifth Circuit noted, "bizarre." *Sambrano*, 2022 WL

486610, at *1 n.2. In truth, this case is solely about whether granting Plaintiff a religious exemption to the vaccine mandate would pose an undue hardship for the Nationals. The Court should decide the issue of religious sincerity so that the parties can litigate the real issue. *See* Complaint, *EEOC v. United Healthcare Services, Inc.*, No. 2:23-cv-3010 (S.D. Ohio, Sep. 19, 2023) (pleading that because employee was telecommuter, there was no undue hardship to accommodate religious objection to COVID-19 vaccination).[16]

This 27th Day of October, 2023.             Respectfully submitted,

/S/ Rachel Rodriguez
Rachel L.T. Rodríguez (DC Bar #501324)
VIRES LAW GROUP, PLLC
DC Bar No. 501324
515 N. Flagler Dr., Suite P300
West Palm Beach, FL 33401
Phone/Fax: (561) 370-7383
rrodriguez@vireslawgroup.com


Charles S. LiMandri (DC Bar #383858)
Mark D. Myers (*pro hac vice*)
LiMANDRI & JONNA LLP
P.O. Box 9120
Rancho Santa Fe, CA  92067
Phone/Fax: (858) 759-9930/(858) 759-9938
cslimandri@limandri.com
mmyers@limandri.com

*Special Counsel for Plaintiff Bernard Gallo Appointed by*
Thomas More Society
309 W. Washington Street, Suite 1250
Chicago, IL 60606
Phone: (312) 782-1680

---

[16] *See also* https://www.eeoc.gov/newsroom/united-healthcare-services-sued-eeoc-religious-discrimination, *last accessed* on October 24, 2023.

## CERTIFICATE OF SERVICE

I, Rachel L.T. Rodriguez, hereby certify that on this 27th day of October, 2023, a copy of the foregoing Plaintiff's Motion for Partial Summary Judgment was served by the electronic means using the Court's electronic filing system upon:

Michael J. Lorenger
651 South Washington Street
Alexandria, Virginia 22314
(703) 684-1800 Direct
(703) 684-1805 Fax
mlorenger@lorengercarnell.com
cburke@lorengercarnell.com

*Counsel for Defendant Washington Nationals Baseball Club, LLC*

_____//S//_____
Rachel L.T. Rodriguez

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BERNARD GALLO** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Case No. 1:22-cv-01092-APM** |
| | : | |
| **WASHINGTON NATIONALS BASEBALL CLUB, LLC** | : | |
| | : | |
| **Defendant.** | : | |

**PROPOSED ORDER**

Having reviewed Plaintiff's Motion for Partial Summary Judgment, Defendant's Opposition thereto, and Plaintiff's Reply in support of his Motion, and for good cause shown, it is hereby:

ORDERED that Plaintiff's motion is GRANTED; and it is further

ORDERED that Plaintiff Bernard Gallo had and has a sincere religious objection to COVID-19 vaccination that conflicted with Defendant's vaccine policy.

.

Entered this _____ day of _____, 2023.

_____
Hon. Amit P. Mehta

Copies to:
Charles LiMandri, Esq.
Rachel Rodriguez, Esq.
Michael Lorenger, Esq.